2015-7092, -7106

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

CONLEY F. MONK, JR.,

*Claimant-Appellant,*

v.

ROBERT A. MCDONALD,
Secretary of Veterans Affairs,

*Respondent-Appellee.*

---

**Appeal from the U.S. Court of Appeals for Veterans Claims
In Case No. 15-1280, Judge Lawrence B. Hagel**

---

**OPENING BRIEF OF CLAIMANT-APPELLANT**

---

Michael J. Wishnie, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Org.
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800

*Counsel for Claimant-Appellant*

## CERTIFICATE OF INTEREST

Counsel for the Appellant certifies the following:

1.   The full name of every party or amicus represented by me is:

Conley F. Monk, Jr.

2.   The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

The real party in interest is named.

3.   All parent corporations and any publicly held corporations that own 10 percent or more of the stock the party or amicus curiae represented by me are:

None.

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Jerome N. Frank Legal Services Organization; Michael Wishnie, Supervising Attorney.


/s/ Michael J. Wishnie

October 16, 2015            _____

Michael J. Wishnie

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................ i

TABLE OF CONTENTS ............................................................. ii

TABLE OF AUTHORITIES ......................................................... iv

STATEMENT OF RELATED CASES ........................................... 1

JURISDICTIONAL STATEMENT ............................................... 2

STATEMENT OF THE CASE ..................................................... 3

STATEMENT OF FACTS ............................................................ 4

I.     Extraordinary Delays Pervade the VA Appeals System. ..................... 6

II.    Appellant Monk's Experience Illustrates the Serious Human
       Cost of Delays for Veterans with Medical and Financial Hardship ... 11

III.   Individual Petitions for Writs of Mandamus Fail to Address
       the Scope and Gravity of the Delays. ................................................. 17

SUMMARY OF ARGUMENT .................................................... 21

ARGUMENT ............................................................................. 23

I.     Standard of Review ........................................................................ 23

II.    The CAVC Has the Power to Aggregate Claims Under the AWA .... 23

       A.     The AWA Grants Courts Broad, Flexible Powers to Fashion
              Appropriate Procedural Tools in Aid of Their Jurisdiction. .... 24

       B.     Other Federal Courts Have Exercised AWA Authority to
              Aggregate Claims When Rule 23 Does Not Apply. ................ 27

       C.     It is Undisputed that the CAVC has AWA Powers. ................ 30

D.    It Would Be Unwarranted and Anomalous to Hold That the CAVC Lacks Authority Ever to Aggregate Claims. ................ 32

III.  The CAVC May Exercise its Inherent Equitable Powers to Aggregate Claims. ............................................................. 37

A.    Federal Courts Have Broad Equitable Powers, Including to Aggregate Claims. ................................................... 38

B.    Article I Courts May Exercise Inherent Equitable Powers, Including to Aggregate Claims. ............................... 41

C.    Like Other Federal Courts, the CAVC May Exercise Its Equitable Powers to Aggregate Claims. ................... 45

CONCLUSION ......................................................... 50

CERTIFICATE OF COMPLIANCE ........................................... 51

ADDENDUM ............................................................ 52

# TABLE OF AUTHORITIES

## CASES

*Adams v United States*,
  317 U.S. 269 (1942) ................................................................. 25

*Adderly v. Wainright*,
  58 F.R.D. 389 (M.D. Fla. 1972) ............................................... 30

*Adeyi v. McDonald*,
  606 F. App'x 1002 (Fed. Cir. 2015) ......................................... 34

*Amador v. Andrews*,
  655 F.3d 89 (2d Cir. 2011) ......................................................... 2

*Ambase Corp. v. United States*,
  61 Fed. Cl. 794 (2004) .............................................................. 42

*Bailey v. W.*,
  160 F.3d 1360 (Fed. Cir. 1998) ................................................ 47

*Beamon v. Brown*,
  125 F.3d 965 (6th Cir. 1997) .................................................... 35

*Bessette v. Avco Fin. Servs., Inc.*,
  230 F.3d 439 (1st Cir. 2000) .................................................... 44

*Bijeol v. Benson*,
  513 F.2d. 965 (7th Cir. 1975) ................................................... 29

*Blanchard v. Wood*,
  No. CIV.A. 93-3780, 2001 WL 1502335 (E.D. La. Nov. 20, 2001) ......... 19

*Bokum v. Commissioner*,
  992 F.2d 1136 (11th Cir. 1993) ................................................ 44

*Booth v. McManaman*,
  830 F. Supp. 2d 1037 (D. Haw. 2011) ...................................... 19

*Brown v. Gardner*,
  513 U.S. 115 (1994) ................................................................ 34

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................ 46

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .................................................................. 45

*Clincher v. United States*,
  499 F.2d 1250 (Ct. Cl. 1974) .................................................. 43

*Cox v. West*,
  149 F.3d 1360 (Fed. Cir. 1998) ................................... 30, 31, 36

*Crone v. United States*,
  538 F.2d 875 (Ct. Cl. 1976) .................................................... 43

*Cushman v. Shinseki*,
  576 F.3d 1290 (Fed. Cir. 2009) .............................................. 13

*Denius v. Dunlap*,
  330 F.3d 919 (7th Cir. 2003) .................................................... 5

*Erspamer v. Derwinski*,
  1 Vet App. 3 (1990) ................................................................ 32

*Exley v. Burwell*,
  No. 3:14-CV-1230 JAM, 2015 WL 3649632 (D. Conn. June 10, 2015) .. 19

*Ferguson v. Shinseki*,
  No. 13-1149, 2014 WL 463690 (Ct. Vet. App. Feb. 6, 2014) ................... 45

*Freytag v. C.I.R.*,
  501 U.S. 868 (1991) ................................................................ 38

*F.T.C. v. Sec. Rare Coin & Bullion Corp.*,
  931 F.2d 1312 (8th Cir. 1991) ................................................ 40

*Gazaille v. McDonald*,

27 Vet. App. 205 (2014)..........................................................................45

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ................................................................. 2

*Giuliani Contracting Co. v. United States*,
    21 Cl. Ct. 81 (1990).............................................................. 42

*Giusti-Bravo v. U.S. Veterans Admin.*,
    853 F. Supp. 34 (D.P.R. 1993) ............................................... 48

*Greenstein ex rel Horowitz v. Perales*,
    No. 89 Civ. 1038 (RJW), 1989 WL 434395 (S.D.N.Y. June 21, 1989).... 19

*Harris v. Nelson,*
    394 U.S. 286 (1969) .............................................................. 28

*Hazel–Atlas Glass Co. v. Hartford–Empire Co.*,
    322 U.S. 238 (1944) .............................................................. 40

*Henderson v. Shinseki,*
    562 U.S. 428, 432 n. 2 (2011) ................................................ 46

*In re Bailey*,
    182 F.3d 860 (Fed. Cir. 1999) ............................................... 45

*In re Indian Palms Associates, Ltd.*,
    61 F.3d 197 (3d Cir. 1995) ...................................................... 4

*In re Ins. Brokerage Antitrust Litig. (MDL 1663)*,
    374 F. App'x 263 (3d Cir. 2010).............................................. 39

*In re Paralyzed Veterans of America*,
    392 F. App'x 858 (Fed. Cir. 2010)........................................... 26

*In re S & G Fin. Servs. of S. Florida, Inc.*,
    451 B.R. 573 (Bankr. S.D. Fla. 2011) ..................................... 41

*In re UNR Indus., Inc.*,
    46 B.R. 671 (Bankr. N.D. Ill. 1985)........................................ 44

*In re World Trade Ctr. Disaster Site Litig.*,
  598 F. Supp. 2d 498 (S.D.N.Y. 2009) ...................................................... 40

*Kaplan v. Chertoff*,
  481 F. Supp. 2d 370 (E.D. Pa. 2007) ...................................................... 19

*King v. St. Vincent's Hosp.*,
  502 U.S. 215 (1991) ............................................................................. 46

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................. 37

*Marshall Associated Contractors, Inc. v. United States*,
  31 Fed. Cl. 809 (1994) .......................................................................... 41

*McCay v. Brown*,
  106 F.3d 1577 (Fed. Cir. 1997) ............................................................. 46

*McClellan v. Carland*,
  217 U.S. 268 (1910) ............................................................................. 26

*Mead v. Parker*,
  464 F.2d 1108 (9th Cir. 1972) ............................................................... 29

*Nehmer v. U.S. Veterans Admin.*,
  712 F. Supp. 1404 (N.D. Cal. 1989) ...................................................... 48

*Nguyen Da Yen v Kissinger*,
  528 F.2d 1194 (9th Cir. 1975) ............................................................... 26

*Noyd v. Bond*,
  395 U.S. 683 (1969) ............................................................................. 30

*Pa. Bureau of Corr. v. United States Marshals Serv.*,
  474 U.S. 34 (1985) ............................................................................... 25

*Pacheco v. Gibson*,
  27 Vet. App. 21 (2014) .......................................................................... 46

*Padgett v. Nicholson*,
    473 F.3d 1364 (Fed. Cir. 2007) ................................................................ 47

*Pauley Petroleum, Inc. v. United States*,
    591 F.2d 1308 (Cl. Ct. 1979)..................................................................... 42

*Price v. Johnston*,
    334 U.S. 266 (1944) ..................................................................... 24, 25, 36

*Price v. U.S.*,
    228 F.3d 420 (D.C. Cir. 2000).................................................................... 49

*Quinault Allottee Ass'n v. United States*,
    453 F.2d 1272 (Ct. Fed. Cl. 1972)....................................................... 42, 43

*Rodriquez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2009) .................................................................... 18

*Rosenberg v. Mansfield*,
    22 Vet. App. 1 (2007)................................................................................. 45

*Roshandel v. Chertoff*,
    554 F. Supp. 2d 1194 (W.D. Wash. 2008) ............................................... 19

*Santillan v. Ashcroft*,
    No. C 04-2686 MHP, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004)........ 19

*Snyder v. Sec'y of the Dep't of Health & Human Servs.*,
    2009 WL 332044 (Ct. Cl. Feb. 12, 2009)................................................. 43

*Sosna v. Iowa*,
    419 U.S. 393 (1975) ..................................................................................... 2

*Spain v. Principi*,
    18 F. App'x 784 (Fed. Cir. 2001)........................................................ 31, 34

*Shvartsman v. Apfel*,
    138 F.3d 1196, 1197-98 (7th Cir. 1998)................................................... 18

*Telecom. Res. & Action Center v. F.C.C.*,

750 F.2d 70 (D.C. Cir. 1984) .................................................... 26

*U.S. Parole Comm'n v. Geraghty,*
   445 U.S. 388 (1980). ........................................................ 2

*United States ex rel. Sero v. Preiser,*
   506 F.2d 1115 (2d Cir. 1974) ..................................... 27, 28, 29

*United States v. Catoggio,*
   698 F.3d 64 (2d Cir. 2012) ............................................. 25

*United States v. Denedo,*
   556 U.S. 906 (2009) ..................................................... 30

*United States v. New York Tel. Co.,*
   434 U.S. 159 (1977) ..................................................... 25

*Veterans for Common Sense v. Shinseki,*
   678 F.3d 1013, 1016 (9th Cir. 2012) ............................. 33, 48

*West v. Randall,*
   2 Mason 181 (Circ. Ct. R. I., 1820) .............................. 38

*Williams v. Richardson,*
   481 F.2d 358 (8th Cir. 1973) ......................................... 29

*Willsey v. Peake,*
   535 F.3d 1368, 1372 (Fed. Cir. 2008) .............................. 23

*Woznick v. Nicholson,*
   19 Vet. App. 198 (2005) ............................................... 31

*Young v. Shinseki,*
   25 Vet. App. 2015 (2012) ..................................... 2, 18, 32

## STATUTES

28 U.S.C. § 1651(a) ...................................................... 3, 24, 34
   § 2412(b) .............................................................. 32
38 U.S.C. § 1110 ............................................................. 4
   § 5303 ................................................................. 16

§ 7107(a) ........................................................ 17, 20, 32
§ 7261(a) ............................................................. passim
§ 7266 ............................................................................ 4
§ 7292(a) ..................................................................... 2, 23

## RULES

Fed. R. Civ. P. 23 ................................................................ 39
Fed. R. Evid. 201(b)(2) .......................................................... 4
U.S. Vet. App. R. 2 .............................................................. 45

## REGULATIONS

38 C.F.R. § 19.30 (1992) ...................................................... 8
§ 19.31 (2008) ............................................................. 8

## OTHER AUTHORITIES

S. Rep. No. 100-418, at 30 (1988) ...................................... 33

27A Am. Jur. Equity § 85 (2d ed., 2015) ........................... 38

7B Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1796.1
    (3d ed., 1998) ............................................................. 20

Manual for Complex Litigation § 22.1 (4th ed. 2004) ................. 38

5-23 Moore's Federal Practice - Civil § 23 App.100 .................... 39

Newberg on Class Actions § 7:17 (5th ed. 2013) ......................... 20

Zechariah Chafee, Some Problems of Equity 152-53 (1949) ...................... 39

Michael P. Allen, *Justice Delayed; Justice Denied? Causes and Proposed
    Solutions Concerning Delays in the Award of Veterans' Benefits*,
        5 U. Miami Nat'l Sec. & Armed Conflict L. Rev. 1, 33 (2015) .. 48

Elizabeth J. Cabraser, *The Essentials of Democratic Mass Litigation*,
        45 Colum. J.L. & Soc. Probs. 499 (2012) .................................... 41

Alvin K. Hellerstein et al., *Managerial Judging: The 9/11 Responders' Tort
    Litigation*,

98 Cornell L. Rev. 127 (2012) ...................................................... 40

Victoria Hadfield Moshiashwili, *Ending the Second "Splendid Isolation"?*
*Veterans Law at the Federal Circuit in 2013*,
63 Am. U. L. Rev. 1437, 1466 (2014)....................................... 18

Lawrence B. Hagel & Michael P. Horan, *Five Years Under the Veterans'*
*Judicial Review Act: The VA Is Brought Kicking and Screaming Into the*
*World of Meaningful Due Process*,
46 Me. L. Rev. 43, 65 (1994) ..................................................... 48

Robert J. Pushaw, Jr., *The Inherent Powers of Federal Courts and the*
*Structural Constitution*,
86 Iowa L. Rev. 735 (2001)........................................................ 24

Stephen Vladeck, *Military Courts and the All Writs Act*,
17 Green Bag 2d 191, 193-94 (2014) ......................................... 30

Charles Alan Wright, *Class Actions*,
47 F.R.D. 169 (1970)................................................................. 38

Stephen Yeazell, *From Group Litigation to Class Action – Part I: The*
*Industrialization of Group Litigation*,
27 U.C.L.A. L. Rev. 514 (1980)................................................. 38

Dave Phillips, *New Rules May Allow Benefits Long Denied to Vietnam-Era*
*Veterans*,
N.Y. Times, Sept. 3, 2014. ........................................................ 16

Board of Veterans' Appeals, Annual Report Fiscal Year 2014
(2015)................................................................................. passim

U.S. Ct. of App. for Vets. Claims, *Annual Report* (Fiscal Year 2014) ... 6, 17,
35

U.S. Dep't of Veterans Affairs, *Findings from the National Vietnam*
*Veterans' Readjustment Study*, ................................................. 14

U.S. Dep't of Veterans Affairs, *VBA Annual Benefits Report Fiscal Year*
*2013* (2014)................................................................................ 15

U.S. Gov't Accountability Office, GAO-13-453T, *Veterans' Disability Benefits: Challenges to Timely Processing Persist* (2013) .......... 7

## STATEMENT OF RELATED CASES

Appellant filed suit in the United States Court of Appeals for Veterans Claims ("CAVC") on behalf of himself and similarly situated veterans. The CAVC issued two orders: one holding that it lacked authority ever to aggregate claims, regardless of the facts or circumstances; and one denying Appellant a writ of mandamus compelling the Secretary of Veterans Affairs ("Secretary") promptly to adjudicate his long-pending disability benefits claim. Appellant then filed a notice of appeal for each order. *Monk v. McDonald*, No. 15-7092 (Fed. Cir. filed May 27, 2015); *Monk v. McDonald*, No. 15-7106 (Fed. Cir. filed July 10, 2015). This Court consolidated the appeals under No. 15-7092 on August 13, 2015. *Monk v. McDonald*, 2015-7092, -7106, ECF No. 12 (Fed. Cir. Aug. 13, 2015).

Another veteran, not represented by Appellant's counsel, separately filed a notice of appeal in this Court. *Van Allen v. McDonald*, No. 15-7095 (Fed. Cir. filed June 25, 2015). The Court dismissed the companion case on September 11, 2015 for failure to submit a brief.

Appellant is unaware of any other appeals stemming from this action that were previously before this Court or any other appellate court, or of any pending cases in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

# JURISDICTIONAL STATEMENT

The U.S. Court of Appeals for the Federal Circuit has exclusive jurisdiction to review final judgments rendered by the CAVC. 38 U.S.C. § 7292(a). Review is timely because the CAVC denied Appellant's request to aggregate claims for extraordinary relief on May 8, 2015, and by final judgment on May 27, 2015. The CAVC denied Appellant's request for individual mandamus relief on July 8, 2015. Appellant timely filed notices of appeal on May 27, 2015 and July 10, 2015, respectively.[1]

---

[1] In September 2015, the Secretary found Mr. Monk eligible for service-connected disability benefits and rated him 100% disabled, ADD6, thus mooting Case No. 15-7106, Mr. Monk's appeal of the denial of his request for individual mandamus relief. This does not moot Case No. 15-7092, however. The "termination of a class representative's claim does not moot the claims of the unnamed members of the class." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *see also Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975). Moreover, challenges to VA delays are "inherently transitory" and "capable of repetition, yet evading review." *Amador v. Andrews*, 655 F.3d 89, 100-01 (2d Cir. 2011). This is because the CAVC "regularly orders the Secretary to respond to a [mandamus] petition . . . . When the Court issues such an order, the great majority of the time the Secretary responds by correcting the problem within the short time allotted for a response, and the petition is dismissed as moot." *Young v. Shinseki*, 25 Vet. App. 201, 215 (2012) (en banc) (Lance & Hagel, JJ., dissenting). "When the claim on the merits is 'capable of repetition, yet evading review,' the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980).

## STATEMENT OF THE ISSUE

Whether the U.S. Court of Appeals for Veterans Claims (CAVC) has the power, pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651(a) (2012), or its equitable powers, to aggregate claims for resolution?

## STATEMENT OF THE CASE

On May 27, 2015, a single-judge panel of the CAVC (Hagel, J.) denied Appellant's request to aggregate his claim with those of similarly situated veterans who face financial or medical hardship and whose administrative appeal has languished for one year or more. Appellant recognized that the CAVC has not adopted a class action rule such as Federal Rule of Civil Procedure 23 and asked the court to exercise its authority under the All Writs Act or its equitable powers to aggregate claims in the case.

Judge Hagel stated that the CAVC lacks a class action rule but did not address Appellant's request that the CAVC proceed pursuant to its All Writs Act or equitable powers. Declaring that "no other arguments matter," the CAVC held that it was powerless, regardless of the facts or circumstances, ever to aggregate claims for resolution. A4.

## STATEMENT OF FACTS

Since the Revolutionary War, Congress has provided compensation for veterans injured during their military service. Today, the Secretary administers the U.S. Department of Veterans Affairs (VA) system to provide benefits for "service-connected" disabilities. 38 U.S.C. § 1110 (2012). An injured or disabled veteran may apply in a VA Regional Office (VARO) for disability compensation and, if aggrieved by the decision, may file an administrative appeal at the Board of Veterans' Appeals (BVA) and then seek judicial review in the CAVC. *Id.* § 7266.

Veterans who appeal an adverse VARO decision face years of delays throughout the appeals process. Bd. of Veterans' Appeals, Annual Report Fiscal Year 2014 at 30 (2015), available at http://www.bva.va.gov/docs/Chairmans_Annual_Rpts/BVA2014AR.pdf [http://perma.cc/YW6g-ZEVJ] [hereinafter BVA FY 2014].[2] These veterans

---

[2] The Board of Veterans' Appeals (BVA) FY 2014 report is not part of the record because the BVA did not release it while this case was pending before the CAVC. The Court may nevertheless take judicial notice of the report as a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Judicial notice may be taken at any stage of the proceeding," including on appeal. *Id.* 201(f); *see, e.g.*, *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995) (taking judicial notice on appeal). Courts have often treated information on government agency websites as a proper subject for

are often trapped in the initial stage of the appeals process, unable to proceed to the next adjudicative forum within a reasonable period of time. *Id.* Those faced with significant financial and medical hardship, such as Appellant Conley Monk, must endure these delays without receiving the benefits intended by Congress to maintain a minimum standard of living. Appellant is a prime example of how the VA's failure to adjudicate initial appeals promptly harms veterans who need the disability benefits they have earned through their military service, so as to manage serious medical conditions, afford basic services, and avoid poverty.

Appellant, after waiting for a decision on his appeal for twenty months, sought to compel action in his individual case and obtain relief for all similarly situated veterans experiencing pervasive delays and who, like himself, experienced significant medical or financial hardship. A10-11. Without aggregation, all similarly situated veterans—potentially in excess of 100,000 veterans—must file individual mandamus petitions before the CAVC to compel action in their cases. BVA FY 2014 at 19. However, few disabled veterans with pending appeals can afford to retain counsel to pursue a mandamus petition. United States Ct. of App. for Vets. Claims, Annual

---

judicial notice. *See, e.g.*, *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on official government website).

Report (Fiscal Year 2014) at 1 (2014), available

at https://www.uscourts.cavc.gov/documents/FY2014AnnualReport06MAR

15FINAL.pdf [http://perma.cc/TMR6-5U4R] [hereinafter CAVC FY 2014]

(in fiscal year 2014, only approximately 200 veterans filed petitions for

extraordinary relief to CAVC with the aid of counsel).[3] Given that such

petitions are routinely mooted out by the Secretary or denied by the CAVC,

including 100% of individual petitions filed in fiscal year 2014, attorneys'

fees are functionally unavailable as well. *Id.* at 2-3.

In response to Appellant's request for a more efficient and equitable

solution to the problem of indigent, disabled veterans suffering from years of

delays, the CAVC held that it lacked authority *ever* to aggregate claims,

regardless of the facts or circumstances. A4.

## I.     Extraordinary Delays Pervade the VA Appeals System.

In recent years, in reaction to widespread congressional and media

condemnation of extensive delays in the Secretary's adjudication of *initial*

*applications*, the VA has reallocated agency resources from appeals

functions to initial claims processing, resulting in a diminished backlog in

initial claims—and a concomitant ballooning of the backlog on

---

[3] The Court may take judicial notice of the CAVC report. *See* cases cited
*supra* note 2.

*administrative appeals*. U.S. Gov't Accountability Office, GAO-13-453T,

Veterans' Disability Benefits: Challenges to Timely Processing Persist 2

(2013), available at http://www.gao.gov/products/GAO-13-453T ("[VAROs]

have in recent years shifted resources away from appeals and towards

claims, which has led to lengthy appeals timeframes.").[4] A veteran who

appeals an initial disability compensation decision will wait, on average,

nearly *forty-six months* before the BVA decides the appeal. BVA FY 2014 at

30. In fiscal year 2013, the same appeal process lasted just under forty-two

months. A85.[5] In other words, a disabled veteran diligently pursuing an

administrative appeal must now wait nearly *four years* for a decision, a wait

time that has increased by approximately ten percent in the last year alone.

    Delays begin as soon as a veteran initiates the appeals process by

filing a Notice of Disagreement (NOD), after which the VARO must issue a

Statement of the Case (SOC) explaining its denial. BVA FY 2014 at 30.

Without a SOC, the veteran cannot proceed to the next step of electing an

adjudicative forum of either a Decision Review Officer (DRO) hearing or an

---

[4] The Court may take judicial notice of this statement. *See* cases cited *supra* note 2.

[5] In FY 2012, the same appeal cycle also took just under forty-two months on average. U.S. Dep't of Veterans Affairs, *Fiscal Year 2012 Annual Report of the Board of Veterans' Appeals* (2012), available at http://www.bva.va.gov/docs/Chairmans_Annual_Rpts/BVA2012AR.pdf [http://perma.cc/H23H-RUH5].

administrative appeal to the BVA. *Id.* In fiscal year 2014, 137,766 veterans filed timely NODs to initiate the appeals process, nearly 20,000 more veterans than had filed in 2013. *Id*. at 27. Since it takes nearly four years on average to adjudicate each appeal, there may be nearly 500,000 appeals pending somewhere in the Secretary's "appeal cycle" by fiscal year 2019.

According to the VA, after initiating an appeal with a NOD, veterans wait, on average, *eleven months* to receive the SOC necessary to file the substantive appeal. *Id.* at 30. If the veteran then elects a DRO hearing and the VA adheres to its denial, the VARO will issue a Supplemental Statement of the Case (SSOC), which the veteran will need if he or she chooses to appeal to the BVA.[6] 38 C.F.R. § 19.31 (2008).

If the veteran appeals to the BVA, he or she confronts extraordinary delays while the VARO certifies and transfers the record. BVA FY 2014 at 30. In fiscal year 2014, a veteran waited, on average, *another twenty-three months* for the VA simply to send the required paperwork to the BVA so that the BVA could begin adjudicating the appeal. *Id*. It appears that many disabled veterans could walk to the BVA in Washington, DC, with their records in hand more swiftly than the VAROs certify their records. Walking

---

[6] Alternatively, the veteran may forego a DRO hearing and appeal directly to the BVA after receiving a SOC. 38 C.F.R. § 19.30 (1992).

Directions from Hartford Regional Office to the Board of Veterans Appeals, Google Maps, http://maps.google.com (follow "Directions" hyperlink; then search starting point field for "555 Willard Ave, Newington, CT 06111" and search destination field for "810 Vermont Ave NW, Washington, DC 20420") (showing that it would take four days and fifteen hours to walk from the Hartford VARO to the BVA).

After physically receiving the case record, in fiscal year 2014 the BVA took on average *nearly twelve months* to issue a decision. BVA FY 2014 at 30. These delays are not attributable to a surplus of frivolous appeals. The BVA grants or remands the veteran's appeal in 75.8% of the cases that it manages to decide. *Id*. at 26. The BVA's annual report displays graphically that the average wait in fiscal year 2014 was *forty-six months* for a veteran who diligently pursued an administrative appeal. *Id.* at 30 (image reproduced below).



Worse still, it appears that the BVA's backlog is growing. In fiscal year 2014, the number of veterans filing appeals to the BVA grew by nearly 12%, to 47,065 new appeals. *Id.* at 19. At the end of fiscal year 2014, there were 66,778 certified cases before the BVA, roughly 6,400 more than in fiscal year 2013, *id.* at 29, with tens of thousands more waiting in the VAROs. The BVA estimates that fiscal year 2015 will see a total of 74,072 cases docketed upon receipt at the BVA. *Id.* at 23.

## II. Appellant Monk's Experience Illustrates the Serious Human Cost of Delays for Veterans with Medical and Financial Hardship.

Mr. Monk's experience exemplifies the severe harms imposed by extensive delays on veterans confronting serious financial or medical hardship. Like many veterans, Mr. Monk, a Marine Corps combat veteran who served in Vietnam, suffers from psychological and physical disabilities incurred from his service. He has been diagnosed with post-traumatic stress disorder (PTSD), major depressive disorder, diabetes mellitus, hepatitis, and hypertension. A13. He has also suffered a number of strokes, resulting in legal blindness, short-term memory loss, and chronic pain. A14.

Mr. Monk applied to the VA for the disability benefits he earned through his service, but he faced delays at each step of his application process:

11

- On February 13, 2012, with the assistance of undersigned counsel, Mr. Monk applied for benefits for all of his service-connected disabilities. *Id.*

- On August 22, 2012, despite ample evidence of his service-connected disabilities, the VARO denied Mr. Monk's claim on the basis of his other-than-honorable discharge ("OTH").[7] *Id.* Mr. Monk did not receive notice of the VARO's denial until March 2013, nearly a year later. *Id.*

- On December 13, 2012, before he received notice of the denial, Mr. Monk submitted supplemental materials and requested a personal hearing, a request he repeated in February 2013, to determine his eligibility for the statutory exception to the general bar on benefits for veterans with an OTH. *Id.*

- On July 16, 2013, Mr. Monk initiated the appeals process by timely filing a NOD and requesting a DRO hearing. A15.

- On February 18, 2014, the VARO held a DRO hearing. *Id.*

- In early March 2015, his counsel made inquiry through the office of his congressperson, Rep. Rosa DeLauro, whose staff

---

[7] An OTH is generally a bar to VA disability benefits, but Mr. Monk invoked a statutory exception in his application that renders him eligible notwithstanding his OTH. A14.

learned that the VA had postponed a decision on his appeal until it received his military service records from the Board for Correction of Naval Records (BCNR), which was independently considering Mr. Monk's discharge upgrade application.[8] A15. The VA had not advised Mr. Monk of this decision to postpone adjudication.

- On April 6, 2015, nearly *two years* after he filed his NOD, Mr. Monk had not received a decision and so petitioned for mandamus relief in the CAVC, in line with this Court's decision in *Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009). A10-11.

For disabled veterans like Mr. Monk who are already confronting significant medical and financial hardship, delays in the administrative appeals process cause severe tangible harm. Mr. Monk has struggled to manage his medical conditions since his return from Vietnam, and those struggles intensified as he aged. A13. While Mr. Monk's NOD was pending

---

[8] With the further assistance of counsel, Mr. Monk made an independent application to the BCNR, an agency of the U.S. Department of Defense, to upgrade his discharge status because the minor misconduct that resulted in his OTH was attributable to undiagnosed PTSD. A15-16. The VA has never explained why it could not obtain a copy of the allegedly relevant records, nor has it offered a reason why a decision could not have been made on the existing administrative record. A16-30.

and he awaited a DRO decision, he had no choice but to rely on Social Security and Medicaid to provide a basic level of income and health care. Furthermore, during his wait, he was left on the verge of homelessness after a fire severely damaged his home in 2014. A14. His emotional and physical displacement after the house fire, and his worries about securing stable housing, all complicated Mr. Monk's attempts to treat his health problems. *Id.*

Like Mr. Monk, many veterans who are elderly, indigent, and suffering from serious medical conditions are severely prejudiced by extensive delays in the appeals process. Approximately forty-five percent of the veteran population is over the age of sixty-five. A91. Nearly one-third of 1.3 million uninsured nonelderly veterans had incomes below 100% of the federal poverty level. A113. Approximately thirty percent of Vietnam veterans alone have suffered PTSD at some point in their lives. Jennifer L. Price, *Findings from the National Vietnam Veterans' Readjustment Study*, U.S. Dep't of Veterans Affairs, http://www.ptsd.va.gov/professional/research-bio/research/vietnam-vets-study.asp [http://perma.cc/7AJ4-JZDV].[9]

---

[9] The Court may take judicial notice of this information on the VA website. *See* cases cited *supra* note 2.

Veterans in acute medical hardship are frequently in financial

hardship as well. In 2012, forty-one percent of veterans who participated in

the federal Supplemental Nutrition Assistance Program (SNAP) were also

disabled. A101. For these veterans, income from VA disability benefits—

income earned by their service—is crucial for their health and their very

survival. *Cf.* U.S. Dep't of Veterans Affairs, VBA Annual Benefits Report

Fiscal Year 2013 (2014), available at

http://www.benefits.va.gov/REPORTS/abr/ABR-Compensation-FY13-

09262014.pdf [http://perma.cc/RG33-9YBQ] (estimating average individual

amount of disability compensation paid annually is $10,368).[10] Yet not

every veteran in medical and financial hardship has access to the necessary

legal resources to pursue appeals for disability benefits.

Subsequent to filing the April 2015 CAVC petition that is the subject

of this appeal, matters improved for Mr. Monk. In June 2015, the BCNR

granted his application and upgraded his discharge status to "general under

honorable conditions."[11] A128. The Secretary then found Mr. Monk eligible

---

[10] The Court may take judicial notice of this VA report. *See* cases cited
*supra* note 2.
[11] Mr. Monk's record correction application had also languished for more
than 20 months, in excess of the separate statutory period for determination
of such cases by record corrections boards. *See* 10 U.S.C. § 1557(b) (2012)
(mandating adjudication of applications within eighteen months of

for disability compensation and on September 11, 2015 rated him as 100% disabled. ADD6.[12]

Mr. Monk was fortunate to secure pro bono representation in both his VA benefits application and CAVC mandamus petition. It is impossible to know what role counsel played in the Secretary's adjudication of Mr. Monk's appeal in approximately half the time waited by other veterans. However, the human cost of that delay in Mr. Monk's case illustrates the harm imposed by the Secretary on tens of thousands of other disabled veterans desperately waiting months and years for decisions on their appeals.

---

submission). Mr. Monk was the named plaintiff in a proposed nationwide class action challenging arbitrary and discriminatory treatment of discharge upgrade applications by Vietnam veterans with PTSD. *See Monk v. Mabus*, No. 3:14-cv-260-WWE (D. Conn. filed Mar. 3, 2014) ("*Monk v. Mabus*"). This lawsuit contributed to the decision by the Secretary of Defense to order a review of all PTSD-related applications to the record corrections boards in September 2014, in which a diagnosis of PTSD would be afforded "special consideration." *See* Dave Phillips, *New Rules May Allow Benefits Long Denied to Vietnam-Era Veterans*, N.Y. Times, Sept. 3, 2014. The U.S. District Court then remanded Mr. Monk's claim to the BCNR in November 2014 with instructions to complete adjudication within 120 days of his resubmitting his claim. *Monk v. Mabus*, ECF No. 48.

[12] Because the Secretary still has not ruled on Mr. Monk's claim that he is eligible for VA benefits, notwithstanding his OTH, because he fits a statutory exception, *see* 38 U.S.C. § 5303 ("insanity" exception), there remains a live dispute regarding the effective date of his award of benefits. Upon Mr. Monk's filing of another NOD, and if averages hold, the BVA will adjudicate his appeal by August 2019, in about forty-six months. BVA FY 2014 at 30.

### III. Individual Petitions for Writs of Mandamus Fail to Address the Scope and Gravity of the Delays.

Veterans who face prolonged and ever-increasing delays at the initial appeal stage can attempt to advance their individual cases, but these individual attempts have not fixed delays at the system level. Congress has provided that veterans may petition the BVA for advancement of their cases on the docket. *See* 38 U.S.C. § 7107(a)(2)(B), (C) (2012) (providing that the BVA may advance a case on its docket when the veteran faces significant financial or medical hardship). Many veterans with pending appeals have no access to legal resources; these veterans may not even be aware of what a writ of mandamus is or how to seek one. Without representation, few veterans take advantage of this option. BVA FY 2014 at 27 (stating that 32.8% of veterans whose appeals are denied by the BVA have no representation of any kind, including attorneys, veterans service organizations, or other agents).

Compounding cost-prohibitive representation is how frequently the claims of those who are able to file a petition for extraordinary relief are dismissed or rendered moot. In fiscal year 2014, the CAVC granted zero petitions for extraordinary relief; it denied or dismissed all of the 306 petitions it adjudicated. CAVC FY 2014 at 2. Yet these statistics alone do not present the full account. The CAVC "regularly orders the Secretary to

17

respond to a [mandamus] petition . . . . When the Court issues such an order, the great majority of the time the Secretary responds by correcting the problem within the short time allotted for a response, and the petition is dismissed as moot." *Young v. Shinseki*, 25 Vet. App. 201, 215 (2012) (en banc) (Lance & Hagel, JJ., dissenting).

Furthermore, on the rare occasion that the CAVC issues an individual writ of mandamus, the ruling has no immediate, practical effect on the thousands of pending appeals for which no petitions for mandamus have been filed. Victoria Hadfield Moshiashwili, *Ending the Second "Splendid Isolation"? Veterans Law at the Federal Circuit in 2013*, 63 Am. U. L. Rev. 1437, 1466 (2014) (noting that "the majority of Veterans Court decisions are single-judge adjudications and non-precedential"). Because the majority of CAVC mandamus decisions do not create the type of precedent that alters how the VA processes and adjudicates initial appeals, any given CAVC decision will not lead the BVA to proactively identify similarly situated veterans to whom it would apply.

Seeking the type of system-wide relief won by individuals challenging agency delays in other contexts,[13] Mr. Monk filed his petition for a writ of

---

[13] Courts have certified classes challenging agency delays in a wide variety of contexts. *See, e.g.*, *Rodriquez v. Hayes*, 591 F.3d 1105 (9th Cir. 2009)

mandamus on behalf of himself and all other similarly situated veterans experiencing pervasive delays and suffering significant medical or financial hardship. He did not seek review of the merits of other veterans' claims. Rather, Mr. Monk requested only that the CAVC order the Secretary promptly to *adjudicate* their appeals.

Recognizing that the CAVC lacks a court rule comparable to Federal Rule of Civil Procedure 23, Mr. Monk requested that the CAVC exercise its authority under the All Writs Act, 28 U.S.C. § 1651(a), or its equitable powers to "fashion an aggregate resolution procedure *in this case*," A19 (emphasis added), and fulfill its congressional mandate. A20.

Mr. Monk proposed that the CAVC aggregate claims of "all veterans who applied for VA disability benefits and (a) have timely filed an NOD

---

(immigration proceedings); *Shvartsman v. Apfel*, 138 F.3d 1196, 1197-98 (7th Cir. 1998) (naturalization applications); *Exley v. Burwell*, No. 3:14-CV-1230 JAM, 2015 WL 3649632, at *6 (D. Conn. June 10, 2015) (Medicare appeals); *Booth v. McManaman*, 830 F. Supp. 2d 1037, 1040 (D. Haw. 2011) (food stamp eligibility); *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194 (W.D. Wash. 2008) *amended in part*, No. C07-1739MJP, 2008 WL 2275558 (W.D. Wash. June 3, 2008) (naturalization applications); *Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 376 (E.D. Pa. 2007), *as amended* (Apr. 16, 2007) (applications for lawful permanent residence); *Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990, at *12 (N.D. Cal. Oct. 12, 2004) (issuance of evidence of registration); *Blanchard v. Wood*, No. CIV.A. 93-3780, 2001 WL 1502335, at *1 (E.D. La. Nov. 20, 2001) (Medicaid applications and appeals); *Greenstein ex rel Horowitz v. Perales*, No. 89 Civ. 1038 (RJW), 1989 WL 434395, at *5-6 (S.D.N.Y. June 21, 1989) (Medicaid reimbursements).

upon denial of their initial application and have not received a decision

within twelve months, whether the veteran elected a DRO hearing or

proceeded directly to a BVA appeal; and (b) can demonstrate medical or

financial hardship as defined by 38 U.S.C. §§ 7107(a)(2)(B), (C)." A18. Mr.

Monk alleged that the proposed aggregate group would satisfy the standards

borrowed from Federal Rule of Civil Procedure 23. A18-23. Mr. Monk

asserted that the proposed group members shared a common claim,

resolvable with a single injunction from the CAVC.

     Mr. Monk also noted that "a court is not bound by a complaint's

proposed class, and may instead certify a class it finds to be more

appropriate." A23. For example, courts can order pre-certification discovery,

which could be handled if necessary by appointment of a special master.

A24. *See also* Newberg on Class Actions § 7:17 (5th ed. 2013)

(recommending that judges require precertification discovery plans); 7B

Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1796.1 (3d

ed., 1998) (discussing pre-certification discovery).

     In a single-judge panel, the CAVC denied Mr. Monk's request for

aggregate resolution, ruling that it is powerless, regardless of the facts or

circumstances, ever to aggregate claims for resolution. A3-4 (emphasizing

"the Court's long-standing declaration that it does not have the authority to

entertain class actions" and declaring "in the absence of [the authority to establish a class action procedure], no other arguments matter"). Because it concluded that it lacked authority ever to aggregate claims, the CAVC did not reach the questions of what standard to apply if it were to consider aggregating claims; whether that standard was met in this case; and if not, whether to revise the proposed aggregate group definition, facilitate pre-certification discovery, or otherwise manage the case.

## SUMMARY OF ARGUMENT

Congress created the CAVC as the exclusive and sole means for veterans to obtain judicial review of their benefit applications. As part of the court's mandate, Congress gave the CAVC the power to "compel the action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2) (2012). Entrusted with serving the nation's veterans and ensuring that the Secretary processes and adjudicates applications in accordance with the law, the CAVC possesses the authority to aggregate claims for resolution through its AWA authority as well as its equitable powers.

The AWA provides federal courts with a flexible, adaptable set of judicial tools for problems arising within their jurisdiction. These tools include the ability to aggregate claims, a procedure on which federal courts have relied in contexts where Federal Rule of Civil Procedure 23 does not

apply. It is undisputed that the AWA applies to the CAVC, and it would be anomalous to conclude that the CAVC, alone among federal courts, lacks the authority under the AWA *ever* to aggregate claims, regardless of the facts or circumstances of the case.

Like other Article I courts, the CAVC may also exercise its equitable powers to aggregate claims. Federal courts routinely use their equitable powers to aggregate claims and manage various forms of aggregate litigation. The CAVC likewise has the authority to manage cases pursuant to its equitable powers.

The CAVC erred by failing even to consider its authority to aggregate claims under the AWA or its equitable powers. This refusal is contrary to the broad congressional purpose for establishing the court and deprives disabled veterans without access to counsel of the ability to challenge pervasive delays in adjudication of VA appeals, which take, on average, nearly four years. The CAVC's insistence that it lacks AWA authority or equitable powers to address systemic issues, such as extensive delays where individual writs of mandamus are unable to provide relief to similarly situated veterans, is incorrect. This Court should rule that the CAVC—like other federal courts—has the power to aggregate claims in appropriate cases, and remand to the CAVC to consider whether aggregation is appropriate in this case.

**ARGUMENT**

**I.    Standard of Review**

This Court reviews a "legal determination of the [CAVC] *de novo*."

*Willsey v. Peake*, 535 F.3d 1368, 1372 (Fed. Cir. 2008). "Upon such review,

the Court of Appeals for the Federal Circuit shall have power . . . if the

decision of the Court of Appeals for Veterans Claims is not in accordance

with law, to modify or reverse the decision . . . or to remand the matter, as

appropriate." 38 U.S.C. § 7292(e)(1) (2012).

**II.    The CAVC Has the Power to Aggregate Claims Under the AWA.**

Congress created the AWA to endow federal courts with broad and

flexible powers to fashion any necessary order in aid of their jurisdiction.

The legislature intentionally did not define the form the writs could take or

constrain the types of procedures that courts could craft. Recognizing the

intent of Congress, courts have exercised ample creativity and flexibility

when invoking this historic power. This power has been used in aid of a

court's prospective jurisdiction over cases not yet before it and to aggregate

claims.

It is well settled that like other Article I courts, the CAVC has

authority under the AWA to enter all appropriate orders in aid of its

jurisdiction. To hold that the CAVC has authority under the AWA but *may*

*not* exercise these undisputed powers to aggregate claims in appropriate

23

cases would be unwarranted, anomalous, and in direct opposition to the intent of the AWA. This Court should reverse the CAVC's decision and remand this case for consideration as to whether aggregation is appropriate in the present case.

> ### A.    The AWA Grants Courts Broad, Flexible Powers to Fashion Appropriate Procedural Tools in Aid of Their Jurisdiction.

The AWA, originally enacted as Section 14 of the Judiciary Act of 1789, 1 Stat. 81, provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2012). Congress codified this "historic and great" tool from ancient common law traditions, *see Price v. Johnston*, 334 U.S. 266, 283 (1944), wherein judges possessed "unbridled discretion to order a defendant in personam to do (or refrain from doing) a particular act," Robert J. Pushaw, Jr., *The Inherent Powers of Federal Courts and the Structural Constitution*, 86 Iowa L. Rev. 735, 803 (2001).

Congress intended the AWA to provide courts with flexible powers to fashion any appropriate procedural tool in aid of the performance of its duties. *See Price*, 334 U.S. at 282 (finding that the AWA provides a "legislatively approved source of procedural instruments" not confined to "the precise forms of that writ in vogue at the common law or in the English

system"). The Supreme Court has explained that the AWA's broad language demonstrated legislative intent not to limit the nature of the tools available to federal courts acting within their jurisdiction. *Id.* at 283-84 ("Congress has said as much by the very breadth of its language in [the AWA]. It follows that we should not write in limitations which Congress did not see fit to make.").

Accordingly, the Supreme Court and Courts of Appeals have repeatedly emphasized that the AWA grants broad, flexible powers. "Justice may on occasion require the use of a variation or a modification of an established writ. It thus becomes essential not to limit appellate courts to the ordinary forms and purposes of legal process." *Id.*; *see also Pa. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 43 (1985) ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute."); *United States v. New York Tel. Co.*, 434 U.S. 159, 173 (1977) ("[A] federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it."); *Adams v United States*, 317 U.S. 269, 274 (1942) ("[D]ry formalism should not sterilize procedural resources which Congress has made available to the federal courts."); *United States v. Catoggio*, 698 F.3d

25

64, 67 (2d Cir. 2012) ("The broad power conferred by the All Writs Act is aimed at achieving the rational ends of law, and thus, courts have significant flexibility in exercising their authority under the Act."); *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1203 (9th Cir. 1975) ("The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected.").

In particular, the Supreme Court and other courts have repeatedly held that a federal court's power under the AWA extends to issuing writs in aid of that court's *prospective* jurisdiction over claims not yet before the court but pending in an administrative agency or lower court. *See, e.g.*, *McClellan v. Carland*, 217 U.S. 268, 280 (1910) ("[W]here a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below."); *In re Paralyzed Veterans of America*, 392 F. App'x 858, 859-60 (Fed. Cir. 2010) ("Because the Secretary's alleged unlawful withholding of the final rule [for a presumption regarding three service connected diseases] interferes with our jurisdiction pursuant to 38 U.S.C. § 502, we have authority under the All Writs Act, 28 U.S.C. § 1651, to address the Secretary's action in failing to issue the final

rule."); *Telecom. Res. & Action Center v. F.C.C.*, 750 F.2d 70, 76 (D.C. Cir. 1984) ("Because the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction."); *see also* 38 U.S.C. § 7261(a)(2) (expressly providing that CAVC may redress undue delay by Secretary).

The AWA, by its plain terms, applies to all federal courts. The statute was intentionally crafted in open-ended language to grant courts flexible powers. For centuries, courts have recognized and affirmed that the reach and adaptability of this ancient authority are fundamental to its efficacy. To arbitrarily truncate this well-established power would be unwarranted and anomalous.

### B.   Other Federal Courts Have Exercised AWA Authority to Aggregate Claims When Rule 23 Does Not Apply.

Federal courts exercise their AWA powers in countless situations, to address a wide variety of litigation circumstances not expressly contemplated by specific federal statutes or court rules. *See supra* Part II.A. These cases reflect judicial nimbleness in the face of litigation exigencies, often deployed to promote goals of fairness and efficiency. One important class of such cases concerns the exercise of AWA authority by a federal court to aggregate claims where Rule 23 or its equivalent does not apply.

27

*See, e.g.*, *United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974) (aggregating habeas petitions using the AWA).

A powerful example of federal courts exercising their power under the AWA to aggregate claims involves petitions for a writ of habeas corpus—a class of cases that, like Mr. Monk's petition for extraordinary relief, seek to invoke a federal court's authority to issue an ancient common law writ. When drafted, the Federal Rules of Civil Procedure did not apply in habeas proceedings filed in the federal district courts. *See Harris v. Nelson,* 394 U.S. 286, 292 (1969) ("At the time of the decision below, Rule 81(a)(2) provided . . . that the Rules were not applicable in habeas corpus . . . ."). Instead, courts were required to invoke their power under the AWA to "fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage." *Id.* at 299. In response to claims on behalf of groups of similarly situated habeas petitioners, multiple Courts of Appeals held that, even though Rule 23 did not clearly apply, the courts could aggregate the petitions into "representative habeas actions" pursuant to the AWA. *Sero*, 506 F.2d at 1125.

The Second Circuit, for example, aggregated claims under the AWA in a habeas case brought on behalf of young adults who had been improperly sentenced. *Sero*, 506 F.2d at 1131. The court acknowledged that Rule 23 did

not apply in habeas cases, but nevertheless affirmed that federal courts have the "authority to fashion expeditious methods of procedure." *Id.* at 1125. The specific facts of the case—that many potential petitioners would lack counsel, and the inefficiency that would come with "hearing and deciding numerous individual petitions"—favored aggregating the claims. *Id.* at 1126. Therefore, the court relied on its authority under the AWA and found "in the unusual circumstances of this case a compelling justification for allowing a multi-party proceeding," which it named a "representative habeas action" and to which Rule 23 did not apply. *Id.* at 1125.

Other federal courts have also held that, even where Rule 23 is not available, they possess the power to aggregate claims under the AWA. For example, the Eighth Circuit explained that, "under certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts." *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973) (upholding the lower court's ability to aggregate habeas claims in appropriate cases). Similarly, the Seventh and Ninth Circuits held that habeas cases could be aggregated when a large group of individuals may benefit. *See Bijeol v. Benson*, 513 F.2d. 965, 968 (7th Cir. 1975) (finding "a representative procedure analogous to the class action" may be used when the number of

plaintiffs is too large for joinder and all cases address the same issue of law);
*Mead v. Parker,* 464 F.2d 1108, 1113 (9th Cir. 1972) (holding that
aggregating habeas cases is allowed "where the relief sought can be of
immediate benefit to a large and amorphous group"); *see also Adderly v.
Wainright*, 58 F.R.D. 389, 400 (M.D. Fla. 1972) (concluding "that under
[the AWA] Rule 23 may, when appropriate, be applied by analogy to a
petition for writ of habeas corpus").

Federal courts clearly have the power to aggregate claims under the
AWA in appropriate circumstances. This Court should remand this case to
determine whether or not aggregation would be appropriate.

### C.    It is Undisputed that the CAVC has AWA Powers.

This Court has held that the CAVC, like other Article I courts, has the
authority to issue writs in aid of its jurisdiction under the AWA. *Cox v. West*,
149 F.3d 1360, 1363 (Fed. Cir. 1998) ("By its express terms, the AWA
unambiguously applies to 'all courts established by Act of Congress.' The
Court of Veterans Appeals is such a Court."); *see also United States v.
Denedo*, 556 U.S. 906, 911 (2009) (affirming that Article I courts may issue
writs under the AWA); *Noyd v. Bond*, 395 U.S. 683, 695 n.7 (1969) (same);
*Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005) (citing *Cox*, 149
F.3d at 1363). *See generally* Stephen Vladeck, *Military Courts and the All*

*Writs Act*, 17 Green Bag 2d 191, 193-94 (2014) (arguing that Article I courts should fully embrace their congressionally-granted AWA powers).

Like other federal courts, the CAVC's authority under the AWA extends to issuing writs of mandamus in aid of its prospective jurisdiction, including writs to compel the Secretary to adjudicate long-pending claims. In *Cox*, this Court rejected the Secretary's argument that the CAVC lacked the ability to issue a writ under the AWA. 149 F.3d at 1364. As this Court explained, because the inaction of the Secretary threatened the prospective jurisdiction of the CAVC, the Court could compel the agency to adjudicate the claim. *Id.* ("[T]he failure of an agency Board to adjudicate a case impacts as much on a reviewing court's jurisdiction as does a failure of a lower court to act. The Court of Veterans Appeals therefore has the power to issue a writ compelling agency action.").[14]

The CAVC has exercised its AWA authority to issue writs of mandamus and order the Secretary to respond to NODs on numerous occasions. *See, e.g.*, *Woznick v. Nicholson*, 19 Vet. App. 198, 202 (2005)

---

[14] This Court's suggestion, in an unpublished summary affirmance, that its jurisdiction is limited to review of final BVA decisions, *see Spain v. Principi*, 18 F. App'x 784 (Fed. Cir. 2001), is inconsistent with *Cox* and well-established Supreme Court precedent holding that the AWA grants courts the power to issue writs in aid of their prospective jurisdiction. *See supra* Part II.A.

31

(granting a writ of mandamus directing the Secretary to issue a SOC in response to a NOD); *Erspamer v. Derwinski*, 1 Vet App. 3 (1990) (affirming that petitioner experienced unreasonable delay warranting a writ of mandamus). Not every petition results in a decision from the CAVC, however, as the court often calls for a response from the Secretary to a petition for extraordinary relief, to which the Secretary responds "by correcting the problem within the short time allotted for a response, and the petition is dismissed as moot."[15] *Young v. Shinseki*, 25 Vet. App. 201, 215 (2012) (en banc) (Lance & Hagel, JJ., dissenting).

It is well settled that the CAVC has the *authority* under the AWA to issue a writ of mandamus regarding a long-pending claim, including in individual cases such as those of Conley Monk and similarly situated veterans who face significant medical or financial hardship. *See* 38 U.S.C. § 7107.

> ### D.    It Would Be Unwarranted and Anomalous to Hold That the CAVC Lacks Authority Ever to Aggregate Claims.

---

[15] A consequence of this approach by the CAVC is that attorneys who handle a mandamus petition that is mooted out upon the court's order directing a response by the Secretary may not be eligible for attorneys' fees under the Equal Access to Justice Act. 28 U.S.C. § 2412(b) (2012) (limiting attorneys' fees awards to the "prevailing party"). This dynamic contributes to the lack of counsel available to help veterans with long-pending appeals.

Systemic delays frustrate Congress's purpose in establishing the CAVC. Congress created the court to address concerns that "a veteran or other claimant aggrieved by a final BVA decision was left without further recourse" to challenge any injustice. S. Rep. No. 100-418, at 30 (1988). Given "the tremendous volume of applications for benefits that are processed annually and the many thousands of appeals taken from unfavorable decisions," Congress recognized "a significant opportunity for some injustices to occur," *id.*, and created the CAVC with the power to "compel the action of the Secretary unlawfully withheld *or unreasonably delayed*," 38 U.S.C. § 7261(a)(2) (emphasis added).

Moreover, in establishing the CAVC to review veterans' claims of error or delay, Congress meant for the court to be the *exclusive* means for this vital judicial review, such that other U.S. Courts of Appeals have held that they lack jurisdiction to consider class actions challenging VA delays. *See, e.g.*, *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1016 (9th Cir. 2012) (en banc) ("Congress, in its discretion, has elected to place judicial review of claims related to the provision of veterans' benefits beyond our reach and within the exclusive purview of the [CAVC] and the Court of Appeals for the Federal Circuit.").

It would be anomalous to hold that, although the CAVC has AWA authority, the court can *never* use that AWA authority to aggregate claims, regardless of the facts or circumstances of the case. The plain language of the AWA establishes the CAVC's authority to issue "*all*" writs necessary and appropriate to its jurisdiction, 28 U.S.C. § 1651(a)—not "all writs except writs to aggregate claims." More than two centuries of judicial precedent confirm the expansive reach of the AWA, a statutory grant of power that is even more ancient in origin than its codification in the First Judiciary Act.[16] *See supra* Part II.A.

To the extent this Court perceives any ambiguity in the plain language of AWA authorization to issue "all" writs, such that its inclusion of writs to aggregate claims (as has been exercised in habeas cases such as *Sero*) is uncertain, that ambiguity must be resolved in favor of the CAVC's authority. First, Congress established the CAVC so as to provide meaningful judicial review of errors or delay by the Secretary. 38 U.S.C. § 7261(a)(2) (2012). Second, it is axiomatic that this Court must resolve any statutory ambiguity

---

[16] This Court has commented on class actions before the CAVC in two unpublished opinions. *See Adeyi v. McDonald*, 606 F. App'x 1002, 1004 (2015) (per curiam); *Spain v. Principi*, 18 F. App'x 784, 785-86 (Fed. Cir. 2001) (summary affirmance). In neither case was the Court presented with arguments concerning the CAVC's power to aggregate claims pursuant to the AWA or its equitable powers.

in favor of the veterans who petition the CAVC. *See, e.g.*, *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994) (affirming canon of statutory interpretation directing that statutory ambiguities be resolved in the veteran's favor).

The theoretical availability of individual mandamus petitions does not alter this statutory analysis. More than 100,000 veterans have waited years for the Secretary to adjudicate their initial administrative appeal, a process that in fiscal year 2014 took, on average, *forty-six months*. BVA FY 2014 at 30. Many of these veterans face significant medical or financial hardship. It is pure fantasy to pretend that these disabled, indigent veterans have meaningful recourse to individual petitions. To begin with, there is no right to counsel in veterans' disability benefits cases. Moreover, the high incidence of disability and poverty among these claimants, *see supra* Statement of Facts Part II, compounded by their geographic distance from the CAVC courthouse in Washington, DC and the complexity of filing a mandamus petition, renders this option difficult, if not inaccessible. Even on the rare occasion when a veteran successfully petitions for mandamus from the CAVC, that decision does not affect VA's processing of other veterans'

appeals.[17] *See supra* Statement of Facts Part III. That only approximately 200 veterans managed to secure counsel to file a petition for extraordinary relief confirms that aggregation of claims is necessary for the CAVC to discharge its obligation and review unreasonable VA delay, such as the protracted delay now endured by veterans on their initial appeal.

Furthermore, this Court has held that the AWA grants the CAVC power to issue writs when it affects the CAVC's appellate jurisdiction. *Cox*, 149 F.3d at 1364 (holding that the CAVC "has the power to issue a writ compelling agency action"). Post-NOD delays are just one example of systemic VA failures that the CAVC could remedy by compelling agency action. The AWA gives the CAVC power to aggregate claims implicating systemic failures and fashion solutions to address problems affecting its prospective jurisdiction.

---

[17] Thus, the Sixth Circuit's suggestion that class actions in the CAVC are unnecessary because the CAVC's "decisions of individual claims will have a binding effect on the manner in which the VA processes subsequent veterans' claims," is inapplicable to the claims of the proposed group in this case. *Beamon v. Brown*, 125 F.3d 965, 968-69 (6th Cir. 1997) (holding that the CAVC possesses AWA authority but affirming the denial of class certification). Moreover, the CAVC rarely grants writs of mandamus to binding effect. CAVC FY 2014 at 2 (stating in FY 2014, the CAVC dismissed or denied every single one of the 306 petitions for extraordinary relief that it adjudicated).

Given the congressional purpose in creating the CAVC and its role as the exclusive forum for judicial review of the Secretary's decisions, it would be radical to conclude that the CAVC could *never* exercise the full range of judicial tools at its disposal to address systemic VA failures. The Supreme Court has explicitly cautioned courts not to arbitrarily restrict their AWA powers. *Price,* 334 U.S. at 284 (1948). It would be contrary to judicial precedent and the historic purpose of the AWA if this Court were to conclude that the CAVC does not have the power to aggregate claims and effectively manage its jurisdiction in appropriate cases.

## III.  The CAVC May Exercise its Inherent Equitable Powers to Aggregate Claims.

Like other Article I courts and their Article III counterparts, the CAVC may, when necessary, draw upon its inherent powers to enforce its statutory jurisdiction and facilitate just, fair results. Federal courts have long recognized that equitable powers inhere in their jurisdiction, employing those equitable powers to aggregate claims and manage various forms of aggregate litigation. The CAVC does not differ from other federal courts in its authority to manage cases pursuant to its jurisdiction under 38 U.S.C. § 7261(a)(2) (providing that the CAVC can "compel action of the Secretary unlawfully withheld or unreasonably delayed").

### A. Federal Courts Have Broad Equitable Powers, Including to Aggregate Claims.

Federal courts have inherent equitable powers to remedy a demonstrated wrong, fulfill their jurisdictional mandates, and manage the disposition of cases on their dockets. *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (affirming "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *see also Freytag v. C.I.R.*, 501 U.S. 868, 889 (1991) (holding that non-Article III tribunals, in addition to Article III courts, "exercise the judicial power of the United States"); 27A Am. Jur. Equity § 85 (2d ed., 2015) ("It is an established maxim that equity will not suffer a wrong to be without a remedy."). "The absence of precedent or of legislative or rule-making solutions should not foreclose innovation and creativity" by courts when managing complex litigation. Manual for Complex Litigation § 22.1 (4th ed. 2004).

Indeed, the most common form of aggregate litigation—the modern class action—evolved as "an invention of equity," one "mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs." Charles Alan Wright, *Class Actions*, 47 F.R.D. 169 (1970); Fed. R.

Civ. P. 23, n. to subdivision (a) (1938); *see also West v. Randall*, 2 Mason 181, 194 (Circ. Ct. R. I., 1820) (noting the Equity Rules as the predecessor of the modern representative action); Stephen Yeazell, *From Group Litigation to Class Action – Part I: The Industrialization of Group Litigation*, 27 U.C.L.A. L. Rev. 514, 563 (1980) (describing the evolution of aggregate litigation since its emergence under equity rules in the mid-nineteenth century and its importance as a historical tool for groups that "stand just at the fringes of social recognition and political power" to claim judicial attention).

Before adoption of Rule 23 and its precursors, courts exercised their inherent equitable powers to aggregate claims when appropriate. *See* 5-23 Moore's Federal Practice - Civil § 23 App.100 (explaining that "class suits evolved in English equity through necessity . . . [as] both an escape from and an adjustment to the rule of joinder"); Zechariah Chafee, Some Problems of Equity 152-53 (1949) (noting that the "only reason for coming into equity" for bills of peace with multiple parties was to avoid "a large number of actions at law, in each of which this common question might be disputed over and over again . . . [that would create] a process of a practical smothering of repeated suits [that] may take some time and does not always operate fairly").

Even Article III courts, despite having Rule 23 available to regulate class actions, exercise their inherent equitable powers as alternative, or complementary, authority to aggregate claims. "District court discretion is at its greatest" when exercising equitable powers "in the form of case management decisions in a complex class action." *In re Ins. Brokerage Antitrust Litig. (MDL 1663)*, 374 F. App'x 263, 266 (3d Cir. 2010); *see also Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 248 (1944) (describing how equitable powers have "always been characterized by flexibility" so that courts may "meet new situations which demand equitable intervention, [and] accord all the relief necessary to correct the particular injustices involved in these situations"); *F.T.C. v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314 (8th Cir. 1991) (affirming that "where Congress allows resort to equity for the enforcement of a statute, all the inherent equitable powers of the district court are available for the proper and complete exercise of the court's equitable jurisdiction, unless the statute explicitly, or by a necessary and inescapable inference, limits the scope of that jurisdiction") (internal quotation marks omitted). *Cf. In re World Trade Ctr. Disaster Site Litig.*, 598 F. Supp. 2d 498, 503-04 (S.D.N.Y. 2009) (invoking equitable powers to set a plan to determine the most gravely injured plaintiffs and select a representative sample for full discovery and

40

early trial in 9/11 first responder tort claims); Alvin K. Hellerstein et al.,

*Managerial Judging: The 9/11 Responders' Tort Litigation*, 98 Cornell L.

Rev. 127, 164-165 (2012) (noting that judges "are traditionally given fairly

broad discretion to rule on [evidentiary and procedural aspects of the cases

brought before them]" and "have clearly responded to the need to rescue

otherwise helpless victims from harm caused by self-perpetuating, unjust

institutional impasses, and a number of legal scholars seem to approve of

such a practice"); Elizabeth J. Cabraser, *The Essentials of Democratic Mass*

*Litigation*, 45 Colum. J.L. & Soc. Probs. 499, 521 (2012) (noting that not all

mass actions must be class actions and that "sometimes greater flexibility

than what the Rule 23 formalities impose can be more adaptive to a

particular mass harm . . . [and] an informal, one-off procedure might be the

best").

Article III courts possess inherent equitable powers, including the

power to aggregate claims, to remedy wrongs and manage cases on their

dockets.

### B.    Article I Courts May Exercise Inherent Equitable Powers, Including to Aggregate Claims.

Article I courts exercise equitable powers to fulfill their statutory

mandates, which at times require aggregate or representative action. *See,*

*e.g.*, *In re S & G Fin. Servs. of S. Florida, Inc.*, 451 B.R. 573, 582 (Bankr.

S.D. Fla. 2011) ("[I]t is well within this Court's equitable powers to allow substantive consolidation of entities under appropriate circumstances, whether or not all of those entities are debtors in bankruptcy."); *Marshall Associated Contractors, Inc. v. United States*, 31 Fed. Cl. 809, 816 (1994) (holding that the court "may either consolidate suits within the court or transfer suits to the appropriate agency board"); *Giuliani Contracting Co. v. United States*, 21 Cl. Ct. 81, 82 (1990) (noting that decisions to consolidate are squarely "within the court's discretion"); *Pauley Petroleum, Inc. v. United States*, 591 F.2d 1308, 1315 (Cl. Ct. 1979) (stating that the Court of Federal Claims exercises equitable powers "as an incident of [its] general jurisdiction," if not to grant specific equitable remedies, and to "hear an aspect of [a] complaint that could otherwise seem to be procedurally barred").

When appropriate, Article I courts have aggregated claims in the absence of a formal rule. Article I courts have emphatically rejected any "broadside challenge to [their] power to entertain class actions (apparently of any type or character)." *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272, 1274 (Ct. Fed. Cl. 1972). In *Quinault Allottee Ass'n*, the Court of Federal Claims pointed to 28 U.S.C. § 2071 and its Tucker Act jurisdiction concurrent with that of district courts to hold that "there is nothing in the

type of jurisdiction [it has] . . . to deprive [it] of this modern aid to speedier and less repetitious litigation." *Id.* at 1274; *see also Ambase Corp. v. United States*, 61 Fed. Cl. 794, 797 (2004) (affirming that aggregation falls under the equitable powers of the Court of Federal Claims). The court consequently allowed the suit to go forward as a class action in the absence of a specific class-action rule, finding it acceptable to proceed "on a case-by-case basis, gaining and evaluating experience as [it studied and decided] the class-suit issues presented by individual, concrete cases coming up for resolution." *Quinault Allottee Ass'n*, 453 F.2d at 1276; *see also Crone v. United States*, 538 F.2d 875, 884 (Ct. Cl. 1976) (maintaining the court's case-by-case approach to class actions until Congress promulgated a parallel Rule 23 for the court), *modified on reh'g sub nom, Crone*, 210 Ct. Cl. 748 (1976); *Clincher v. United States*, 499 F.2d 1250, 1252 (Ct. Cl. 1974) (same).

The Vaccine Court, established under the Court of Federal Claims, has similarly fashioned an aggregate resolution mechanism in the absence of a provision for class action suits. "Recognizing that cases involving the same vaccine and injury often involve the same body of medical expertise, the Office of Special Masters ['OSM'] developed the concept of omnibus proceedings to answer the common question of whether a particular vaccine

43

can cause the injury in question . . . ." *Snyder v. Sec'y of the Dep't of Health & Human Servs.*, 2009 WL 332044, at *3 (Ct. Cl. Feb. 12, 2009). The active role and discretion of special masters to determine the format for taking evidence and hearing argument is "virtually unlimited" when they "inquire into matters relevant to causation." *Id.* at *2 (citing *Whitecotton v. Sec'y, HHS*, 81 F.3d 1099, 1108 (Fed. Cir. 1996)).

Bankruptcy courts and the Tax Court are additional examples of Article I courts that have exercised equitable powers. *See, e.g.*, *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444-45 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000) (holding that Section 105 of the Bankruptcy Code empowers a bankruptcy court to "exercise its equitable powers— where 'necessary' or 'appropriate'—to facilitate the implementation of other Bankruptcy Code provisions"); *Bokum v. Commissioner*, 992 F.2d 1136, 1140 (11th Cir. 1993) (affirming that the Tax Court has some equitable powers); *In re UNR Indus., Inc.*, 46 B.R. 671, 675 (Bankr. N.D. Ill. 1985) (holding that, because the Bankruptcy Code permits the court "to afford fair and equitable treatment to parties 'in countless situations in which the [bankruptcy] judge is required to deal with particular, individualized problems,' in this unique case, with its unique circumstances, it is necessary

for the Court to exercise its equitable authority to fashion some kind of procedural relief") (citation omitted).

Article I courts, in addition to Article III courts, may exercise equitable powers to aggregate claims when appropriate.

### C.    Like Other Federal Courts, the CAVC May Exercise Its Equitable Powers to Aggregate Claims.

Other federal courts may employ equitable powers to manage proceedings, and the CAVC is no exception. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *Ex Parte Burr*, 9 Wheat. 529, 531 (1824) to affirm that inherent power is "incidental to all Courts"); *In re Bailey*, 182 F.3d 860, 865 n. 4 (Fed. Cir. 1999) ("Like an Article III Court, the [CAVC] has a need to control court proceedings before it and a need to protect the exercise of its authority in connection with those proceedings."); *Rosenberg v. Mansfield*, 22 Vet. App. 1, 6 (2007) (Kasold, J., concurring) (confirming that "as with any federal court, [the CAVC has] all the authority necessary to exercise equitable jurisdiction and direct equitable relief not otherwise restricted by law"), *aff'd sub nom. Rosenberg v. Peake*, 296 F. App'x 53 (Fed. Cir. 2008); *Gazaille v. McDonald*, 27 Vet. App. 205, 214 (Ct. Vet. App. 2014) (Greenberg, J., concurring) (noting the CAVC may use its equitable powers with "flexibility . . . [and] adaptability to circumstances" similar to that of federal district courts); *Ferguson v. Shinseki*, No. 13-1149,

45

2014 WL 463690, at *3-4 (Ct. Vet. App. Feb. 6, 2014) (Greenberg, J.,

concurring) (affirming that the CAVC is "a court applying the principles of

Article III of the Constitution, and emphatically a court with equitable

power"); U.S. Vet. App. R. 2 ("On its own initiative or on a party's motion,

the Court may suspend any provision of these Rules and otherwise order

proceedings as it sees fit."); *see also* 38 U.S.C. § 7261(a)(2) (providing that

the CAVC can "compel action of the Secretary unlawfully withheld or

unreasonably delayed"); *Henderson v. Shinseki*, 562 U.S. 428, 432 n. 2

(2011) (noting that "the Veterans Court's scope of review, § 7261, is similar

to that of an Article III court reviewing agency action under the

Administrative Procedure Act"); *Califano v. Yamasaki*, 442 U.S. 682, 705

(1979) (stating that "absent the clearest command to the contrary from

Congress, federal courts retain their equitable powers to issue injunctions in

suits over which they have jurisdiction"); *McCay v. Brown*, 106 F.3d 1577,

1581 (Fed. Cir. 1997) (stating that this Court "need not decide if the

[CAVC] is devoid of equity powers in all cases").

The CAVC's equitable powers are "informed by clear

congressional intent, and the judicial tradition of executing that intent when

reviewing veterans benefits." *Pacheco v. Gibson*, 27 Vet. App. 21, 43 (Ct.

Vet. App. 2014) (Greenberg, J., concurring in part, dissenting in part). To

the extent that the CAVC's statutes are ambiguous regarding the court's exercise of equitable powers, such ambiguity must be resolved in favor of veterans. *See, e.g.*, *Henderson*, 562 U.S. at 430 (explaining that the veteran canon of statutory interpretation indicates that "rigid jurisdictional treatment of deadline would clash sharply with solicitude of Congress for veterans and the canon that provisions for veteran benefits are to be construed in the beneficiaries' favor"); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (presuming Congressional awareness of "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor"); *Padgett v. Nicholson*, 473 F.3d 1364, 1368 (Fed. Cir. 2007) (noting the canon that veterans' benefits statutes are to be construed in the veteran's favor); *Bailey v. W.*, 160 F.3d 1360, 1370 (Fed. Cir. 1998) (Michel, J., concurring) ("[T]he Court of Veterans Appeals . . . is an Article I court set in a sui generis adjudicative scheme for awarding benefit entitlements to a special class of citizens, those who risked harm to serve and defend their country. This entire scheme is imbued with special beneficence from a grateful sovereign."), *overruled on other grounds by Henderson v. Shinseki*, 589 F.3d 1201 (Fed. Cir. 2009).

Veterans can individually seek equitable relief before the CAVC, including by petition for extraordinary relief, as Mr. Monk has done in this

47

case. This recourse is especially important for disabled veterans facing

significant medical and financial hardship. Yet these veterans are

challenging delays in the appeals process that affect all claimants facing

medical and financial hardship, and they are seeking similar injunctive relief

for prompt adjudication. For practical and policy reasons, the CAVC must

have equitable powers to "compel correction of a systemic error" that

persists unaddressed by the VA. *See, e.g.*, Lawrence B. Hagel & Michael P.

Horan, *Five Years Under the Veterans' Judicial Review Act: The VA Is

Brought Kicking and Screaming Into the World of Meaningful Due Process*,

46 Me. L. Rev. 43, 65 (1994) (recognizing the value of class actions in

addressing systemic VA errors); Michael P. Allen, *Justice Delayed; Justice

Denied? Causes and Proposed Solutions Concerning Delays in the Award of

Veterans' Benefits*, 5 U. Miami Nat'l Sec. & Armed Conflict L. Rev. 1, 33

(2015) (suggesting that if "a claimant sought an order concerning a delay in

adjudicating her claim for benefits, she could proceed as a representative on

behalf of all others similarly situated").

Furthermore, by granting the CAVC exclusive jurisdiction over

decisions by the BVA, Congress directed that all challenges to VA rules and

policies be considered only by the CAVC. *See, e.g.*, *Nehmer v. U.S.

Veterans Admin.*, 712 F. Supp. 1404 (N.D. Cal. 1989) (finding jurisdiction

48

on the basis that the case began before the VJRA was passed); *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34 (D.P.R. 1993) (same). As the Ninth Circuit recently explained, "Congress may have foreclosed [district court] review of the VA's decisions related to claims adjudication, but it has not foreclosed federal judicial review *in toto*." *Veterans for Common Sense v. Shinseki*, 678 F.3d at 1032; *see also Jones v. U.S.*, 727 F.3d 844, 848 (8th Cir. 2013) (citing *Veterans for Common Sense* for same holding); *Johnson v. Dep't of Veterans Affairs*, 351 F. App'x 288, 289 (10th Cir. 2009) (affirming the "exclusive jurisdictional pathway" to the CAVC for appeals of BVA decisions); *Price v. U.S.*, 228 F.3d 420, 421 (D.C. Cir. 2000) (per curiam) (same). The CAVC is the only forum where claims, similar in facts to cases previously decided yet unaffected by the rulings in those cases, can be aggregated to serve equitable purposes and judicial economy.

Federal courts have a long tradition of exercising equitable powers to aggregate claims. It would be anomalous to hold that the CAVC lacks the power ever to invoke its equitable powers to aggregate claims for resolution. The CAVC, as a court with inherent equitable powers to fulfill its jurisdictional mandate and remedy wrongs within the VA benefits system, erred in holding that it lacks the authority ever to aggregate claims, regardless of the facts of circumstances.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court reverse the CAVC's holding that it lacks authority ever to aggregate claims for resolution, regardless of the facts or circumstances. Because the CAVC did not consider the appropriateness of aggregating claims as proposed in this case, this Court should remand for that determination by the CAVC in the first instance.

October 16, 2015                    Respectfully submitted,

/s/ Michael J. Wishnie
_____
Michael J. Wishnie
Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Org.
P.O. Box 209090
New Haven, CT 06520
203.432.4800

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Federal Rule of
    Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate
    Procedure 28.1(e).

    This brief contains 10,785 words, excluding the parts of the
    brief exempted by Federal Rule of Appellate Procedure
    32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Federal Rule of
    Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure
    28.1(e) and the type style requirements of Federal Rule of Appellate
    Procedure 32(a)(6).

    This brief has been prepared in a proportionally spaced typeface
    using Microsoft Word in 14-point Times New Roman.


    /s/ Michael J. Wishnie
    _____
    Michael J. Wishnie

    *Counsel for Claimant-Appellant*

# ADDENDUM

CAVC Order,                                 ADD1
     dated May 27, 2015

VARO Decision,                             ADD6
     dated September 11, 2015

*Designated for electronic publication only*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 15-1280

CONLEY F. MONK, PETITIONER,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before HAGEL, *Judge*.

**O R D E R**

*Note:  Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

On May 8, 2015, the Court issued an order addressing Conley F. Monk's petition for extraordinary relief in the nature of a writ of mandamus.  In that order, the Court denied that portion of the petition that sought an aggregate resolution or class action certification and ordered the Secretary to respond to that portion of the petition pertaining to Mr. Monk's individual case.

On May 19, 2015, the Court received, through counsel, notice of Mr. Monk's appeal to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) of that portion of the Court's May 8, 2015, order denying aggregate resolution or class action certification.  Because, however, a portion of the May 8, 2015, order is not dispositive, judgment cannot issue, and therefore Mr. Monk's Notice of Appeal to the Federal Circuit is premature.  *See* U.S. VET. APP. R. 36 (a) ("Judgment begins the 60-day time period for appealing to the U.S. Court of Appeals for the Federal Circuit."), (b)(1)(B) (judgment is effective when the Court issues an order dismissing, terminating, or remanding a case).  The Court, however, recognizes that its order resolving this portion of Mr. Monk's petition *is* dispositive and that delay in issuing judgment as to that portion is not in the interest of efficiency.

Accordingly, the Court will withdraw its May 8, 2015, order and issue two orders in its stead: one that is dispositive and addresses the aggregate resolution portion of the petition, and one that is nondispostive and addresses the petition with respect to Mr. Monk's individual case.  The outcome of these issues remains unchanged; this is merely a procedural correction to permit Mr. Monk to pursue his appeal to the Federal Circuit in a more timely manner.

Mr. Monk asserts that his claim for benefits for post-traumatic stress disorder was denied in August 2012 and that he has received no response to his July 2013 Notice of Disagreement.  He

contends that the Secretary's failure to respond in the intervening 20 months amounts to "a constructive denial of benefits." Petition (Pet.) at 2.   Mr. Monk further argues:

> The Secretary has failed to render a timely decision on the pending disability benefits applications of countless other veterans who, like Mr. Monk, face significant financial or medical hardship and have waited twelve months or more for a decision since timely filing a[ Notice of Disagreement] to initiate the appeals process.

> This Court has previously declined to adopt a class action procedure under its organic statute or to aggregate claims through the doctrine of associational standing.  In a series of dissenting and concurring opinions, however, its judges have recognized that the Court may, in an appropriate case, exercise its inherent equitable powers or its authority under the All Writs Act, 28 U.S.C. § 1651(a), for aggregate resolution. The Secretary's pervasive and unlawful delay in adjudicating post-[Notice of Disagreement] claims by thousands of veterans like Mr. Monk warrants judicial intervention on an aggregate basis.

*Id.*

Mr. Monk  requests that the Court "compel the Secretary promptly to decide his claim and that of thousands of similarly situated veterans who confront significant financial or medical hardship while awaiting a VA decision." *Id.*  He argues that, in addition to compelling the Secretary to address his individual claim, the Court should adopt an aggregate resolution procedure for "all veterans who applied for VA disability benefits and (a) have timely filed a[ Notice of Disagreement] . . . and have not received a decision within twelve (12) months . . . ; and (b) can demonstrate medical or financial hardship as defined by 38 U.S.C. §§ 7107(a)(2)(B), (C)." *Id.* at 10.

In his statement of facts regarding "the Aggregate Group [g]enerally," Mr. Monk alleges a series of facts and statistics for which he offers no citation or authority.  *See* Pet. at 8-9.  The Court will not recount these particular facts; suffice it to say that Mr. Monk alleges that the time from the filing of a Notice of Disagreement to a decision by the Board is, on average, "multiple years," Pet. at 8, and that these "extensive delays" create hardships for claimants, *id.* at 9.

Mr. Monk seeks "extraordinary injunctive relief" for an aggregate group comprised of

> all veterans who applied for VA disability benefits and (a) have timely filed a[ Notice of Disagreement] upon denial of their initial application and have not received a decision within twelve (12) months, whether the veteran elected a [decision review officer] hearing or proceeded directly to a [Board] appeal; and (b) can demonstrate medical or financial hardship as defined by 38 U.S.C. §§ 7107(a)(2)(B), (C).

*Id.* at 10.

2

Mr. Monk recognizes that the Court has previously declined to permit class actions because to do so would be unmanageable and unnecessary. *Id.* (citing *Lefkowitz v. Derwinski*, 1 Vet.App. 439, 440 (1991)). He also acknowledges that the Court has "declined to address claims on an aggregate basis by applying the doctrine of associational standing." Pet. at 11 (citing *American Legion v. Nicholson*, 21 Vet.App. 1, 8 (2007) (en banc)).

Nevertheless, Mr. Monk argues that any relief he obtains individually as a result of his petition "would not benefit similarly situated veterans unless each one filed a petition for extraordinary relief in this Court." *Id.* He contends that "the potentially unmanageable volume of cases necessitates an aggregate procedure here" and that fashioning an aggregate resolution procedure under these circumstances "would be a less burdensome way to address the systemic and recurring problem" of post-Notice of Disagreement delays. *Id.*

Mr. Monk contends that the Court has the discretion under the All Writs Act, 28 U.S.C. § 1651(a), to entertain class actions in appropriate circumstances and that the Court has the equitable power to adopt an aggregate resolution procedure. He notes, too, that the Court is authorized to make its own rules of practice and procedure. Pet. at 12 (citing 38 U.S.C. § 7264(a)). He concludes that, "[f]or practical and policy reasons," it is necessary for the Court "to 'compel correction of a systemic error' unaddressed by VA." *Id.* at 12-13 (quoting Lawrence B. Hagel and Michael P. Horan, *Five Years Under the Veterans' Judicial Review Act: The VA Is Brought Kicking and Screaming Into the World of Meaningful Due Process*, 46 ME. L. REV. 43, 65 (1994)).

Mr. Monk notes that Rule 23 of the Federal Rules of Civil Procedure serves as "the standard for class actions in civil suits in the U.S. District Courts" and asserts that even where–as in this Court–the Federal Rules of Civil Procedure do not apply, Rule 23 "has served as a basis for collective action procedures." Pet. at 11. In that light, Mr. Monk contends that the requirements of Rule 23 are met by the proposed aggregate group in this case.

Mr. Monk then argues that his petition should be granted as to the aggregate group, a discussion into which the Court need not delve, given its determination that he has not demonstrated that a class action or aggregate resolution is permitted here.

Even assuming Mr. Monk's statistics regarding the number of potential class members are correct, or that his proposed class meets the dictates of Rule 23, Mr. Monk fails to appreciate the Court's long-standing declaration that it does not have the authority to entertain class actions. *See Harrison v. Derwinski*, 1 Vet.App. 438 (1991) (en banc); *Lefkowitz*, 1 Vet.App. at 440; *see also American Legion*, 21 Vet.App. at 3-4; *Henderson v. Brown*, 10 Vet.App. 272, 278 (1997) ("[T]his Court determined, en banc, in *Lefkowitz* . . . and *Harrison* . . . that it lacked the authority to establish

3

a class action procedure and that to do so would be both unwise and unnecessary."). In the absence of such authority, no other arguments matter.[1]

Accordingly, the Court will deny that part of Mr. Monk's petition that seeks class action or aggregate status for a group of similarly situated veterans. Upon issuance of this order, which will act as the Court's judgment, the Court will forward Mr. Monk's Notice of Appeal to the Federal Circuit.

As a final matter, the Court notes that, on April 9, 2015, veteran Harold William Van Allen, who is self-represented, filed a motion styled as one to "Reopen/Consolidate/Join Petition for Immediate Mandamus Relief as a Similarly Situated Class Member in 15-1280." That motion contains no substance, but its intent is clear from its title.

Mr. Monk filed a response to that motion on April 20, 2015, stating that, at this time, he opposes joinder of Mr. Van Allen "or any other individual veteran in this case." Response at 1. Nevertheless, Mr. Monk notes that, since filing his petition, his counsel "has received inquiries from a very substantial number of veterans" interested in becoming part of any class action or aggregate group that may result from this petition. *Id.* at 1-2.

In light of the Court's disposition of this portion of Mr. Monk's petition, the Court will deny Mr. Van Allen's motion to join.

The Court notes that, on May 20, 2015, the Court received notice of Mr. Van Allen's appeal to the Federal Circuit of that portion of the Court's May 8, 2015, order denying his motion to join. Upon issuance of this order, which will act as the Court's judgment, the Court will forward Mr. Van Allen's Notice of Appeal to the Federal Circuit.

Upon consideration of the foregoing, it is

ORDERED that the Court's May 8, 2015, order is withdrawn. It is further

ORDERED that the portion of Mr. Monk's April 6, 2015, petition seeking certification of a class action is DENIED. It is further

ORDERED that Harold Van Allen's motion to join is DENIED. It is further

ORDERED, pursuant to Rule 36(b)(1)(A), that this order is the judgment of the Court. It is further

---

[1] The question of associational standing is irrelevant here, as Mr. Monk filed his petition on his own behalf and not as a member or representative of any organization or association. Moreover, the Court has held that it is "not permitted to go beyond the jurisdictional statute set forth by Congress and allow for associational standing." *American Legion*, 21 Vet.App. at 2-3 (petition filed by American Legion on behalf of numerous veterans).

4

ORDERED that the Clerk of the Court forward Mr. Monk's and Mr. Van Allen's Notices of Appeal to the Federal Circuit.

DATED: May 27, 2015                                    BY THE COURT:

                                                      /s/ Lawrence B. Hagel
                                                      LAWRENCE B. HAGEL
                                                      Judge

Copies to:

Michael J. Wishnie, Esq.

VA General Counsel (027)

Harold Van Allen

5



**DEPARTMENT OF VETERANS AFFAIRS**

September 11, 2015
CONLEY F MONK
247 HIGHLAND ST FL 3
NEW HAVEN, CT 06511

In Reply Refer To: 308/211/ //RAR
C 26 551 432
MONK, Conley F

Dear Mr. Monk:

You filed a reopened claim for benefits that was received on February 15, 2012. Another reopened claim was received on December17, 2012. These claims were previously denied due to the character of your discharge (i.e.,Veteran status was not established). Such decisions were appealed. During the pendency of the appeal, the Board for Correction of Naval Records upgraded your discharge to under honorable conditions, which is considered honorable for VA purposes. Based on a review of the evidence we have made the following decision on your claim.

This letter tells you about your entitlement amount and payment start date and what we decided. It includes a copy of our rating decision that gives the evidence used and reasons for our decision. We have also included information about additional benefits, what to do if you disagree with our decision, and who to contact if you have questions or need assistance.

## Your Award Amount and Payment Start Date

Your monthly entitlement amount is shown below:

| Monthly Entitlement Amount | Payment Start Date | Reason For Change |
|---|---|---|
| $2,868.00 | Aug 1, 2012 | Original Award |
| 2,916.00 | Dec 1, 2012 | Cost of Living Adjustment |
| 2,959.74 | Dec 1, 2013 | Cost of Living Adjustment |
| 3,010.06 | Dec 1, 2014 | Cost of Living Adjustment |

We are paying you as a single veteran with no dependents.

We couldn't pay for Doris because we don't have the marital histories for both you and your wife. You also stated in your application that the two of you were separated and that you do not pay any support to her; therefore, we could not use her as a dependent when calculating our decision for nonservice connected pension.

2

C 26 551 432
Monk, Conley F

## You Can Expect Payment

Your payment begins the first day of the month following your effective date. You will receive a payment covering the initial amount due under this award, minus any withholdings, in approximately 15 days. Payment will then be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

We noticed that you did not provide us with your banking information to allow your federal benefits to be sent directly to your bank. The Department of Treasury has mandated that all recurring federal benefits be administered through either Electronic Funds Transfer (EFT) or Direct Express® Debit MasterCard®. If you do not provide your banking information to have your benefits electronically transferred to your bank, the Treasury Department will contact you directly to determine your preferred payment method.

- To have your federal benefits electronically transferred to your designated financial institution (e.g. bank) call VA at 1-800-827-1000 with your banking information or go online to www.ebenefits.va.gov.

- To have your federal benefits issued through Direct Express® Debit MasterCard® issued by Comerica Bank call 1-888-213-1625 to enroll in the program.

## What We Decided

We determined that the following conditions were related to your military service, so service connection has been granted:

| Medical Description | Percent (%) Assigned | Effective Date |
|---|---|---|
| Posttraumatic stress disorder (also claimed as major depressive disorder) | 100% | Jul 20, 2012 |
| Type 2 diabetes mellitus with erectile dysfunction | 20% | Jul 20, 2012 |
| Diabetic peripheral neuropathy, left lower extremity associated with type 2 diabetes mellitus with erectile dysfunction | 10% | Jul 20, 2012 |
| Diabetic peripheral neuropathy, right lower extremity associated with type 2 diabetes mellitus with erectile dysfunction | 10% | Jul 20, 2012 |

3

C 26 551 432
Monk, Conley F

We determined that the following conditions were not related to your military service, so service connection couldn't be granted:

| Medical Description |
| --- |
| Hypertension associated with posttraumatic stress disorder (also claimed as major depressive disorder) |
| Stroke and residuals to include blindness |

Entitlement to special monthly compensation based on loss of use of a creative organ is granted from July 20, 2012.

We assigned a permanent 100% disability evaluation for your service connected disability/disabilities effective July 20, 2012.

Basic eligibility to Dependents' Educational Assistance is established from July 20, 2012.

No examination will be scheduled in the future for your permanent and total disability/disabilities.

Your overall or combined rating is 100% effective July 20, 2012. We do not add the individual percentages of each condition to determine your combined rating. We use a combined rating table that considers the effect from the most serious to the least serious conditions.

We enclosed a VA Form 21-8760, "Additional Information for Veterans with Service-Connected Permanent and Total Disability," which explains certain factors concerning your benefits.

We enclosed a VA Form 21-8764, "Disability Compensation Award Attachment-Important Information," which explains certain factors concerning your benefits.

## How Did We Make Our Decision?

We have enclosed a copy of your Rating Decision for your review. It provides a detailed explanation of our decision, the evidence considered, and the reasons for our decision on your claim for compensation benefits. Your Rating Decision and this letter constitute our decision based on your claim received on December17, 2012. It represents all claims we understood to be specifically made, implied, or inferred in that claim.

4

C 26 551 432
Monk, Conley F

The evidence shows your income effective July 20, 2012, exceeds the maximum annual disability pension limit set by law.

The income limit for a veteran with no dependents is $12,256.00.

**Income We Counted**

|  | Annual Earnings | Annual Social Security | Annual Retirement | Annual Other Sources |
|---|---|---|---|---|
| Yourself | $0.00 | $13,752.00 | $0.00 | $0.00 |

You submitted $0.00 in family medical expenses and therefore unable to reduce your income. We can only consider medical expenses that are more than $612.00, which is 5% of $12,256.00, your maximum annual pension rate.

The evidence shows your income effective December 1, 2013, exceeds the maximum annual disability pension limit set by law.

The income limit for a veteran with no dependents is $12,652.00.

**Income We Counted**

|  | Annual Earnings | Annual Social Security | Annual Retirement | Annual Other Sources |
|---|---|---|---|---|
| Yourself | $0.00 | $13,956.00 | $0.00 | $0.00 |

You submitted $0.00 in family medical expenses and therefore unable to reduce your income. We can only consider medical expenses that are more than $632.00, which is 5% of $12,652.00, your maximum annual pension rate.

The evidence shows your income effective December 1, 2014, exceeds the maximum annual disability pension limit set by law.

The income limit for a veteran with no dependents is $12,868.00.

**Income We Counted**

|  | Annual Earnings | Annual Social Security | Annual Retirement | Annual Other Sources |
|---|---|---|---|---|
| Yourself | $0.00 | $14,196.00 | $0.00 | $0.00 |

5

C 26 551 432
Monk, Conley F

You submitted $0.00 in family medical expenses and therefore unable to reduce your income. We can only consider medical expenses that are more than $643.00, which is 5% of $12,868.00, your maximum annual pension rate.

You may reapply for pension when:

'  your income drops **OR**

   medical expenses you pay increase (see the enclosed VA Form 21-8416, "Medical Expense Report," for your use)

If you reapply, please also complete and return the enclosed VA Form 21-0516-1, "Improved Pension Eligibility Verification Report (Veteran With No Children)."

We have enclosed a VA Form 21-0510, "Eligibility Verification Report Instructions," for your use.

**Note:**  You may still be entitled to pension from the date of this claim if your unreimbursed medical expenses reduce your income below the allowable limit.  For such consideration, complete the enclosed Medical Expense Report showing your unreimbursed medical expenses for the period December 27, 2012, to December 31, 2015, and return it to us no later than December 31, 2016. Please note that you are currently receiving the greater benefit in the form of compensation benefits.

## Evidence Used to Decide Your Claim

In making our decision, in addition to the evidence in the attached rating, we used the following evidence:

- VA Form 21-526, Veterans Application for Compensation and or Pension, received on December  17, 2012
- Social Security Inquiry completed on August 31, 2015
- Evidence of record

## Evidence We Need From You to Complete Your Claim For Dependents

The information you sent us about your dependents wasn't complete.  Before we can pay additional benefits for your dependent(s), send us the following:

VA Form 21-686c, "Declaration Of Status Of Dependents."  Please fill out every blank on the form.

6

C 26 551 432
Monk, Conley F

## When and Where to Send the Information or Evidence

Send the information or the evidence to the appropriate address listed on the attached *Where to Send Your Written Correspondence*. Please put your full name and VA file number on the evidence.

We may be able to pay you from the date we received your claim, if we receive the information or evidence within one year from the date of this letter and we decide that you are entitled to VA benefits. If we do not receive the evidence within one year from the date of this letter, we can only pay you from the date we receive the evidence.

## Are You Entitled to Additional Benefits?

The Department of Education provides a program for Veterans to discharge their student loans. To be eligible, the Veteran must have a service-connected disability(ies) that is 100% disabling, or be totally disabled based on an Individual Unemployability determination. For more information concerning this benefit, please call toll-free 1-888-303-7818. Visit the website at **http://www.disabilitydischarge.com/Home/**.

You may be eligible for government life insurance if you

- were released from active duty after April 25, 1951,
- are in good health (except for any service connected conditions), and
- apply within two years of this notification of your disability rating.

If you are totally disabled, you may be eligible to have your government life insurance premiums waived. The Insurance is called Service-Disabled Veterans Insurance (S-DVI), and you should receive a package within two weeks. This package will contain information about the insurance and an application. If you do not receive an S-DVI package, please contact the Insurance Center to request additional information. Call the Insurance toll free number, 1-800-669-8477, or visit the Insurance web site, **http://www.benefits.va.gov/insurance/**, for further information about Service-Disabled Veterans Insurance.

If you served overseas in support of a combat operation you may be eligible for mental health counseling at no cost to you at the Veteran's Resource Center. For more information on this benefit please visit **http://www.myhealth.va.gov/mhv-portal-web/**.

You may be eligible for medical care by the VA health care system for any service connected disability. You may apply for medical care or treatment at the nearest medical facility. If you apply in person, present a copy of this letter to the Patient Registration/Eligibility Section. If you apply by writing a letter, include your VA file number and a copy of this letter.

7

C 26 551 432
Monk, Conley F

---

### REDUCE OR ELIMINATE
### YOUR MEDICAL CO-PAYMENTS

If you receive care at a VA medical facility, **please call our Health Benefits Call Center at 1-877-222-VETS (8387) or notify your local VA medical center** of this change in your compensation benefits. This rating decision may reduce or eliminate your co-payments for your VA-provided medical care. You may also be eligible for a refund based on this rating decision. Information regarding VA health care eligibility and co-payments is available at our website **http://www.va.gov/healthbenefits/cost/**.

---

You should contact your State office of Veteran's affairs for information on any tax, license, or fee-related benefits for which you may be eligible as a Veteran (or surviving dependent of a Veteran). State offices of Veteran's affairs are available at **http://www.va.gov/statedva.htm**.

The VA provides Blind Rehabilitation services to eligible blind, low vision, or visually impaired Veterans to help them regain their independence and quality of life. The Veteran's blindness, low vision, or vision impairment does NOT have to be related or caused by military service. If you need help with your vision loss, please contact your nearest Visual Impairment Services Team Coordinator (VIST) at the eye clinic at your nearest VA Medical Center. For more information, go to **http://www.rehab.va.gov/blindrehab/**.

You may be able to receive vocational rehabilitation employment services. The enclosed VA Form 28-8890, "Important Information About Vocational Rehabilitation Benefits," explains this benefit completely. To apply for this benefit, complete and return the enclosed VA Form 28-1900, "Disabled Veterans Application for Vocational Rehabilitation."

Because of the rating action described in this letter, you may be eligible to have your government life insurance premiums waived. (This doesn't apply if you have Veterans Group Life Insurance [VGLI]). *If your answer is "yes" to all of the following questions,* you should contact the VA Insurance Center at the following toll free telephone number in order to request a "waiver of premiums" on your government life insurance policy. Call 1-800-669-8477.

- Do you have an active government life insurance policy?
- Do you currently pay premiums for your government life insurance policy?

8

C 26 551 432
Monk, Conley F

- Are you considered to be unemployable, or are you rated 100% disabled by VA?
- Were you under age 65 when you became unable to work or 100% disabled?

Your and your dependent(s) may be eligible for the Survivors' and Dependents' Educational Assistance. We are enclosing a VA pamphlet 22-73-3, *Summary of Education Benefits*, which explains the program. To file an application, complete and return the enclosed VA Form 22-5490.

Surviving spouses and children of Service Members who die in the line of duty after September 10, 2001, may also be eligible for the Fry Scholarship, which offers entitlement to the Post-9/11 GI Bill. Benefits include tuition and fee payments, a monthly housing allowance, and a books and supplies stipend. Please visit the GI Bill webpage at www.benefits.va.gov/gibill/index.asp for more information.

Your dependents may be eligible for benefits under CHAMPVA. CHAMPVA is a health benefits program in which the Department of Veterans Affairs (VA) shares the cost of certain healthcare and supplies with eligible beneficiaries. To be eligible for the CHAMPVA program a dependent must be the spouse or child of a veteran who is permanently and totally disabled from a service-connected disability. The Health Administration Center in Denver, Colorado administers the CHAMPVA program. You should call 1-800-733-8387 if additional information is needed.

You may be entitled to Armed Forces Commissary and Exchange privileges. Honorably discharged veterans evaluated as 100 percent disabled due to service-connected disability; or, Medal of Honor recipients; or, military retirees and their dependents may qualify for entitlement to this additional benefit.

Your combined evaluation is 30 percent or more disabling; therefore, you may be eligible for additional benefits based on dependency. If you wish to submit a claim for dependents, please complete and return the attached VA Form 21-686c, *Declaration of Status of Dependents.* Please fill out every blank on the form. We may be able to pay you retroactive benefits for your dependents if you submit the VA Form 21-686c, *Declaration of Status of Dependents* or report dependents within a year from the date of this letter.

## What You Should Do If You Disagree With Our Decision

If you do not agree with our decision, you must complete and return to us the enclosed VA Form 21-0958, Notice of Disagreement, in order to initiate your appeal. You have one year from the date of this letter to appeal the decision. The enclosed VA Form 4107, "Your Rights to Appeal Our Decision," explains your right to appeal.

9

C 26 551 432
Monk, Conley F

## What Is eBenefits?

eBenefits provides electronic resources in a self-service environment to Servicemembers, Veterans, and their families. Use of these resources often helps us serve you faster! Through the eBenefits website you can:

- Submit claims for benefits and/or upload documents directly to the VA
- Request to add or change your dependents
- Update your contact and direct deposit information and view payment history
- Request a Veterans Service Officer to represent you
- Track the status of your claim or appeal
- Obtain verification of your military service, civil service preference, or VA benefits
- And much more!

Enrolling in eBenefits is easy. Just visit www.eBenefits.va.gov for more information. If you submit a claim in the future, consider filing through eBenefits. Filing electronically, especially if you participate in our fully developed claim program, may result in faster decision than if you submit your claim through the mail.

## If You Have Questions or Need Assistance

If you have any questions, you may contact us by telephone, e-mail, or letter.

| If you | Here is what to do. |
|---|---|
| Telephone | Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the Federal number is 711. |
| Use the Internet | Send electronic inquiries through the Internet at https://iris.va.gov. |
| Write | **VA now uses a centralized mail system. For all written communications, put your full name and VA file number on the letter. Please mail or fax all written correspondence to the appropriate address listed on the attached *Where to Send Your Written Correspondence.*** |

In all cases, be sure to refer to your VA file number 26 551 432.

If you are looking for general information about benefits and eligibility, you should visit our website at https://www.va.gov, or search the Frequently Asked Questions (FAQs) at https://iris.va.gov.

10

C 26 551 432
Monk, Conley F

We sent a copy of this letter to your representative, Veterans Legal Services Clinic, whom you can also contact if you have questions or need assistance.

Sincerely yours,


Regional Office Director

Email us at:  https://iris.va.gov

Enclosure(s):   Rating Decision
                Where to Send Your Written Correspondence.
                VA Form 21-8760
                VA Form 21-8764
                VA Form 21-0516-1
                VA Form 21-0510
                VA Form 21-8416
                VA Form 21-686c
                VA Form 28-1900
                VA Form 28-8890
                VA Form 22-5490
                VA pamphlet 22-73-3
                VA Form 21-0958
                VA Form 4107

cc:  VLSC



## DEPARTMENT OF VETERANS AFFAIRS
### Hartford Regional Office
### Evidence Intake Center
### P.O. Box 4444
### Newnan, GA 30271

### CONLEY MONK

### VA File Number
### 265 51 432

### Represented By:
### AGENT OR PVT ATTY-EXCLUSIVE CONTACT NOT REQUESTED

### Rating Decision
### 09/01/2015

### INTRODUCTION

The records reflect that you are a Veteran of the Vietnam Era. You served in the Marine Corps from November 12, 1968 to September 15, 1970. You filed a reopened claim for benefits that was received on February 15, 2012. Another reopened claim was received on December 17, 2012. These claims were previously denied due to the character of your discharge (i.e., Veteran status was not established). Such decisions were appealed. During the pendency of the appeal, the Board for Correction of Naval Records upgraded your discharge to under honorable conditions, which is considered honorable for VA purposes. Based on a review of the evidence listed below, we have made the following decision on your claim.

### DECISION

1. Service connection for posttraumatic stress disorder (also claimed as major depressive disorder) is granted with an evaluation of 100 percent effective July 20, 2012.

2. Service connection for type 2 diabetes mellitus with erectile dysfunction associated with herbicide exposure is granted with a 20 percent evaluation effective July 20, 2012.

CONLEY MONK
265 51 432
2 of 9

3. Service connection for diabetic peripheral neuropathy, left lower extremity is granted with an evaluation of 10 percent effective July 20, 2012.

4. Service connection for diabetic peripheral neuropathy, right lower extremity is granted with an evaluation of 10 percent effective July 20, 2012.

5. Entitlement to special monthly compensation based on loss of use of a creative organ is granted from July 20, 2012.

6. Basic eligibility to Dependents' Educational Assistance is established from July 20, 2012.

7. Service connection for hypertension is denied.

8. Service connection for stroke and residuals to include blindness is denied.

## EVIDENCE

- Service treatment and personnel records for the period of service from December 1968 to September 1970
- Letter, Veteran, dated February 13, 2012
- Report, Dr. Bandy Lee, dated December 10, 2012
- Memorandum, Fiona Doherty, dated November 1, 2012
- Medical records, Northeast Southern Connecticut Internal Medicine, and Metabolism Associates, received December 17, 2012
- Affidavit, Olivia Henderson, dated October 19, 2012
- Affidavit, Aadil T. Al'Alim, dated November 13, 2012
- Affidavit, Veteran, dated December 4, 2012
- Brief in Support of Benefits Application, dated December 13, 2012
- VA Form 21-526, Application for Compensation or Pension, received December 17, 2012
- Memorandum, Jerome N. Frank Legal Services Organization, dated July 16, 2013
- Transcript of Hearing, VARO Hartford (Newington), dated February 18, 2014
- Records, Social Security Administration, received April 9, 2015
- Decision, Board for Correction of Naval Records, dated May 8, 2015
- VA Administrative Decision, dated June 8, 2015
- VA PTSD Examination, dated July 1, 2015
- VA Diabetes Mellitus Examination, dated July 13, 2015
- VA Diabetic Sensory-Motor Peripheral Neuropathy Examination, dated July 13, 2015
- VA Male Reproductive System Examination, dated July 13, 2015

- Medical records, Dr. Samuel Geller, received August 11, 2015
- Medical records, VA CT Healthcare System, from March 20, 2014 through August 24, 2015
- Report of Contact, documenting multiple requests for records from the Connecticut Mental Health Center, dated August 21, 2015.  To date, no records have been received.
- Report of Contact, documenting multiple requests for records from Yale-New Haven Psychiatric Hospital, dated August 21, 2015.  To date, no records from this facility have been received
- Report of Contact, documenting multiple requests to Yale New Haven Hospital for records, dated August 21, 2015.  To date, no records have been received.
- Email, Deputy Executive Director, Board for Correction of Naval Records, dated August 31, 2015

## REASONS FOR DECISION

### 1.  Service connection for posttraumatic stress disorder (also claimed as major depressive disorder).

Service connection for posttraumatic stress disorder (PTSD) (also claimed as major depressive disorder) has been established as directly related to military service.  The July 2015 VA PTSD examination diagnosed PTSD and linked it to your experiences in Vietnam, to include being the target of enemy fire, as well as experiencing land mine and mortar attacks.  The VA examiner related the stressor to fear of hostile military or terrorist activity.  Your stressors are considered to be credibly supported by the evidence, as they are considered consistent with the places, types, and circumstances of your verified service in Vietnam.  Therefore, service connection is granted.

An evaluation of 100 percent is assigned from July 20, 2012, the date you applied for a correction or upgrade of your military discharge.  When compensation is granted based on a correction of military records, including a modification of a military discharge under 10 U.S.C. 1552, as is the case here, the effective date will be the latest of the following dates:

(1) Date application for change, correction, or modification was filed with the service department, in either an original or a disallowed claim;

(2) Date of receipt of claim if claim was disallowed; or

(3) One year prior to date of reopening of disallowed claim.

The Board for Correction of Naval Records has advised that your application for an upgraded discharge was filed on July 20, 2012.  Your initial disallowed claim for posttraumatic stress disorder was received on January 28, 1982.  The current claim to reopen was received February

CONLEY MONK
265 51 432
**4 of 9**

15, 2012, which, under the above rule, would go back one year to February 15, 2011. Thus, the latest date here is July 20, 2012, the date you applied for an upgraded discharge. Accordingly, service connection is granted effective July 20, 2012, the date you applied for an upgraded discharge.

We have assigned a 100 percent evaluation for your posttraumatic stress disorder (also claimed as major depressive disorder) based on:

- Total occupational and social impairment
- Difficulty in adapting to work
- Obsessional rituals which interfere with routine activities
- Difficulty in adapting to stressful circumstances
- Impaired impulse control
- Difficulty in adapting to a worklike setting
- Disturbances of motivation and mood
- Flattened affect
- Difficulty in establishing and maintaining effective work and social relationships
- Impairment of short- and long-term memory
- Panic attacks (weekly)
- Depressed mood
- Mild memory loss
- Chronic sleep impairment
- Anxiety

The examiner noted that there was memory loss for names of close relatives, own occupation, or own name, but this finding is not consistent with findings in VA outpatient notes or with the memory test findings conducted by Dr. Bandy Lee in his December 2012 report, which documented only mild cognitive deficits on testing.

Nevertheless, the overall evidentiary record shows that the severity of your disability most closely approximates the criteria for a 100 percent disability evaluation, resolving any reasonable doubt in your favor. The VA examiner determined that your PTSD results in total occupational and social impairment, which is the basic prerequisite for a 100 percent rating. While not all the symptoms associated with a 100 percent rating are documented, the VA examiner nevertheless determined that impact of such symptoms results, in your case, in total social and occupational impairment, disrupting your ability to relate to superiors, co-workers, and the public in any workplace. This determination is consistent with the December 2012 findings of Dr. Bandy Lee, who determined that your PTSD symptoms are severe and remain significant. Thus, with resolution of any reasonable doubt in your favor, we find that your PTSD results in total social and occupational impairment, thereby warranting the assignment of a 100 percent evaluation.

The July 2015 VA examiner determined that you are competent and are able to manage your own finances.

This is the highest schedular evaluation allowed under the law for posttraumatic stress disorder.

**2.  Service connection for type 2 diabetes mellitus with erectile dysfunction associated with herbicide exposure.**

Service connection may be granted for specific diseases or conditions which are presumed to have been caused by exposure to Agent Orange. Although not shown in service, service connection for type 2 diabetes mellitus with erectile dysfunction has been granted on the basis of presumption due to Agent Orange exposure. That is, personnel records confirm your service in Vietnam, which establishes exposure to Agent Orange. Private medical records document a diagnosis of diabetes mellitus in December 2004, and the July 2015 VA examination confirmed that it is type 2 diabetes mellitus, a disease presumptively associated with exposure to Agent Orange. The VA examiner also diagnosed erectile dysfunction as being a complication of the diabetes. Therefore, service connection is granted.

An evaluation of 20 percent is assigned from July 20, 2012, the date you applied for a correction or upgrade of your military discharge. When compensation is granted based on a correction of military records, including a modification of a military discharge under 10 U.S.C. 1552, as is the case here, the effective date will be the latest of the following dates:

(1) Date application for change, correction, or modification was filed with the service department, in either an original or a disallowed claim;

(2) Date of receipt of claim if claim was disallowed; or

(3) One year prior to date of reopening of disallowed claim.

The Board for Correction of Naval Records has advised that your application for an upgraded discharge was filed on July 20, 2012. Your initial disallowed claim for diabetes was received on October 29, 2010. The current claim to reopen was received December 17, 2012, which, under the above rule, would go back one year to December 17, 2011. Thus, the latest date here is July 20, 2012, the date you applied for an upgraded discharge. Accordingly, service connection is granted effective July 20, 2012, the date you applied for an upgraded discharge.

We have assigned a 20 percent evaluation for your type 2 diabetes mellitus with erectile dysfunction based on:
 • Insulin required

• Requiring more than one daily injection of insulin
• Restricted diet

A higher evaluation of 40 percent is not warranted for diabetes mellitus unless the evidence shows:
• Diabetes requiring insulin, restricted diet, and regulation of activities.

The VA examiner noted that regulation of activities is required based on you needing to carry glucose tablets to prevent hypoglycemic episodes during exercise. This does not demonstrate that you are required to avoid strenuous occupational and recreational activities as part of your treatment of diabetes, which is how regulation of activities is defined. Rather, it only demonstrates that you have pills that prevent reactions during exercise. Moreover, VA treatment notes document specific determinations that there is no restriction of physical activity and that you are engaged in an exercise program with no specific restrictions noted. Such evidence does not demonstrate regulation of activities due to diabetes. Therefore, an evaluation of no more than 20 percent is warranted at this time.

The following conditions would be rated as non-compensable if rated by themselves:
• Erectile Dysfunction

A non-compensable disability is considered part of the diabetic process and does not warrant a separate evaluation. Therefore, this issue will be included as part of your diabetic process, henceforth. If your condition becomes worse in the future, a separate evaluation will be considered.

A separate 20 percent evaluation for erectile dysfunction is not warranted unless there is loss of erectile power with penile deformity.

Aside from peripheral neuropathy of the lower extremities, which are addressed as separate issues, the July 2015 VA examiner found no other complications of diabetes and determined that you have no other condition that has been aggravated by the diabetes mellitus.

**3. Service connection for diabetic peripheral neuropathy, left lower extremity as secondary to the service-connected disability of type 2 diabetes mellitus with erectile dysfunction.**

Service connection for diabetic peripheral neuropathy, left lower extremity has been established as related to the service-connected disability of type 2 diabetes mellitus with erectile dysfunction. The July 2015 VA examiner diagnosed diabetic neuropathy as a complication of the service connected diabetes mellitus.

An evaluation of 10 percent is assigned from July 20, 2012, the date entitlement arose, resolving any reasonable doubt in your favor, since the July 2015 VA examiner determined, based on your reported history of experiencing symptoms (which you are competent to describe) that the neuropathy has been present since 2010.

We have assigned a 10 percent evaluation for your diabetic peripheral neuropathy, left lower extremity based on:
• mild incomplete paralysis

A higher evaluation of 20 percent is not warranted for paralysis of the sciatic nerve unless the evidence shows nerve damage is moderate.

**4.  Service connection for diabetic peripheral neuropathy, right lower extremity as secondary to the service-connected disability of type 2 diabetes mellitus with erectile dysfunction.**

Service connection for diabetic peripheral neuropathy, right lower extremity has been established as related to the service-connected disability of type 2 diabetes mellitus with erectile dysfunction. The July 2015 VA examiner diagnosed diabetic neuropathy as a complication of the service connected diabetes mellitus.

An evaluation of 10 percent is assigned from July 20, 2012, the date entitlement arose, resolving any reasonable doubt in your favor, since the July 2015 VA examiner determined, based on your reported history of experiencing symptoms (which you are competent to describe) that the neuropathy has been present since 2010.

We have assigned a 10 percent evaluation for your diabetic peripheral neuropathy, right lower extremity based on:
• mild incomplete paralysis

A higher evaluation of 20 percent is not warranted for paralysis of the sciatic nerve unless the evidence shows nerve damage is moderate.

**5.  Entitlement to special monthly compensation based on loss of use.**

Entitlement to special monthly compensation is warranted in this case because criteria regarding loss of use of creative organ were met from July 20, 2012, the date the requirements for this benefit were first met.  Specifically, the July 2015 VA examiner noted that the erectile dysfunction is treated with medication and that an erection sufficient for penetration and

CONLEY MONK
265 51 432
8 of 9

ejaculation with medication cannot be achieved, thus demonstrating loss of use. Accordingly, entitlement to special monthly compensation on this basis is granted.

### 6. Eligibility to Dependents' Educational Assistance under 38 U.S.C. chapter 35.

Eligibility to Dependents' Educational Assistance is derived from a veteran who was discharged under other than dishonorable conditions; and, has a permanent and total service-connected disability; or a permanent and total disability was in existence at the time of death; or the veteran died as a result of a service-connected disability. Also, eligibility exists for a serviceperson who died in service. Finally, eligibility can be derived from a service member who, as a member of the armed forces on active duty, has been listed for more than 90 days as: missing in action; captured in line of duty by a hostile force; or forcibly detained or interned in line of duty by a foreign government or power.

Basic eligibility to Dependents' Education Assistance is granted as the evidence shows you currently have a total service-connected disability, permanent in nature: posttraumatic stress disorder. The effective date of this award is July 20, 2012, the date the requirements for this benefit were first met.

### 7. Service connection for hypertension as secondary to the service-connected disability of posttraumatic stress disorder (also claimed as major depressive disorder).

Service connection may be granted for a disease or injury which resulted from a service-connected disability or was aggravated thereby. The evidence does not show that hypertension is related to the service-connected condition of posttraumatic stress disorder (also claimed as major depressive disorder), nor is there any evidence of this disability during military service.

VA records, records from the Social Security Administration, and private medical records, as listed above, document no findings suggesting a link of the diagnosed hypertension to your service connected posttraumatic stress disorder, as has been claimed, or any other service connected disability, to include diabetes. In this regard, the July 2015 VA examiner did not determine that the hypertension has been caused or aggravated by the diabetes mellitus. Nor is there any evidence that the hypertension was incurred during service. Service treatment records do not document hypertension, and private medical records, as listed above, indicate an onset of hypertension in the 1980s, well over one year after your discharge from the military. None of these records contain findings indicating a link of the hypertension to service in some way. Therefore, the claim for service connection must be denied.

CONLEY MONK
265 51 432
9 of 9

## 8.  Service connection for stroke and residuals to include blindness.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service.  Service connection for stroke and residuals to include blindness is denied since this condition neither occurred in nor was caused by service.

Service treatment records do not document a stroke.  Post-service private medical records, as listed above, document that the stroke occurred around October 2004, well after your discharge from service, and none of these records, records from the Social Security Administration (SSA), or VA medical records, as listed above, contain findings indicating a link to service.  To the contrary, a November 2004 discharge summary from the Hospital of Saint Raphael (contained in records from SSA) documented the specific conclusion that the stroke is most likely due to poorly-controlled blood pressure, and hypertension is not service connected.  Therefore, the claim for service connection must be denied.

## REFERENCES:

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits.  For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our web site, www.va.gov.

| Where to Send Your Written Correspondence | | |
|---|---|---|
| **Location of Residence** | | **Address to Send all Written Correspondence** |
| Alabama | Ohio | |
| Connecticut | Pennsylvania | |
| Delaware | Rhode Island | |
| District of Columbia | South Carolina | |
| Florida | Tennessee | Department Of Veterans Affairs |
| Georgia | Vermont | Evidence Intake Center |
| Indiana | Virginia | PO BOX 4444 |
| Kentucky | West Virginia | Newnan, GA  30271-0020 |
| Maine | Puerto Rico | |
| Maryland | | Or fax your information to: |
| Massachusetts | Europe | |
| Michigan | Asia | Toll Free: 844-531-7818 |
| Mississippi | Australia | Local: 248-524-4260 |
| New Hampshire | Africa | |
| New Jersey | Palau | |
| New York | Marshall Islands | |
| North Carolina | Federated States of Micronesia | |
| Alaska | South Dakota | |
| Arizona | Texas | |
| Arkansas | Utah | |
| California | Washington | |
| Colorado | Wisconsin | |
| Louisiana | Wyoming | Department Of Veterans Affairs |
| Hawaii | | Evidence Intake Center |
| Idaho | Canada | PO BOX 4444 |
| Illinois | Mexico | Janesville WI 53547-4444 |
| Iowa | Central America | |
| Kansas | South America | Or fax your information to: |
| Oklahoma | The Caribbean | |
| Oregon | The U.S. Virgin Islands | Toll Free: 844-822-5246 |
| Minnesota | The Philippines | Local: 608-373-6690 |
| Missouri | American Samoa | |
| Montana | Guam | |
| Nebraska | Northern Mariana Islands | |
| Nevada | U.S. Virgin Islands | |
| New Mexico | | |
| North Dakota | | |

## PROOF OF SERVICE

I hereby certify under penalty of perjury, that on this 16th day of

October, 2015, a copy of the foregoing OPENING BRIEF OF CLAIMANT-

APPELLANT was filed electronically. This filing was served electronically

to all parties by operation of the Court's electronic filing system.

/s/ Michael J. Wishnie

_____

Michael J. Wishnie