2015-7092

IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CONLEY F. MONK, JR.

Claimant-Appellant,

v.

ROBERT A. McDONALD, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Veterans Claims In Case No. 15-1280,
Judge Lawrence B. Hagel

BRIEF OF RESPONDENT-APPELLEE

BENJAMIN C. MIZER
Principal Deputy Assistant
  Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

Of Counsel:

BRIAN D. GRIFFIN                    MARTIN F. HOCKEY
Deputy Chief Counsel               Assistant Director

AMANDA BLACKMON                     AGATHA KOPROWSKI
Attorney                            Trial Attorney
Office of General Counsel           Commercial Litigation Branch
Department of Veterans Affairs      Civil Division
810 Vermont Avenue, NW              Department of Justice
Washington, DC 20420                P.O. Box 480, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Telephone:  (202) 616-0467
                                    agatha.m.koprowski@usdoj.gov

January 14, 2016                    Attorneys for Respondent-Appellee

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...............................................................iii

STATEMENT OF RELATED CASES ................................................. xi

STATEMENT OF THE ISSUES.........................................................1

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS ..................2

    I.     Procedural History ....................................................2

    II.     Factual Background ....................................................5

SUMMARY OF THE ARGUMENT ....................................................8

ARGUMENT ..................................................................................9

    I.     Standard Of Review ....................................................9

    II.     This Court Does Not Possess Jurisdiction To Review This Appeal Because There Is No Live Case Or Controversy ......................10

        A. The Challenged Action Is Not "Capable Of Repetition, Yet Evading Review" .................................................11

        B. Mr. Monk May Not Continue To Litigate Class Certification Issues Following The Loss Of His Personal Stake In The Outcome Of This Litigation .............................................16

    III.     This Court Does Not Possess Jurisdiction Pursuant To 38 U.S.C. § 7292 ....................................................18

        A. The Court Does Not Possess Jurisdiction To Review Decisions Sounding In Equity.............................................19

        B. The Veterans Court Applied Veterans Law To The Facts Alleged In Mr. Monk's Petition .............................................21

        C. The All Writs Act Cannot End Run The Requirements Of § 7292(d)..26

    IV.     In The Alternative, This Court Should Affirm the Veterans Court's Decision That A Class Action Was Not Merited Under These Circumstances.........................................................29

A.  The Veterans Court Correctly Determined Mr. Monk Failed To Demonstrate Aggregate Resolution Of His Petition Is Appropriate .....33

B.  The Veterans Court Properly Considered And Rejected Mr. Monk's Attempt To Use The All Writs Act To Expand Its Jurisdiction Impermissibly ......................................................................................39

C.  Mr. Monk Has Failed To Show How His Rights Or Those Of The Purported Class Have Been Harmed By The Veterans Court's Decision .....................................................................................42

V.    This Court May Not Issue Advisory Opinions .........................................46

CONCLUSION .......................................................................................55

# TABLE OF AUTHORITIES

## **Cases**

*Adeyi v. McDonald*,
606 F. App'x 1002 (Fed. Cir. 2015) ..................................................39

*Alvarez v. Smith*,
558 U.S. 87 (2009) ........................................................................14

*Am. Legion v. Nicholson*,
21 Vet. App. 1 (2007) ........................................................ 24, 40–41

*Andrews v. Principi*,
351 F.3d 1134 (Fed. Cir. 2003) ......................................................9

*Apotex, Inc. v. Thompson*,
347 F.3d 1335 (Fed. Cir.  2003) .............................................. 13–14

*Arizonians for Official English v. Ariz.*,
520 U.S. 43 (1997) .................................................................. 10–11

*Bates v. Nicholson*,
398 F.3d 1355 (Fed. Cir. 2005) ....................................................48

*Beasley v. Shinseki*,
709 F.3d 1154 (Fed. Cir. 2013) ........................... 22, 26–28, 35–36, 38

*Bernklau v. Principi*,
291 F.3d 795 (Fed. Cir. 2002) ......................................................40

*Bethea v. Derwinski*,
2 Vet. App. 252 (1992) ........................................................... 23, 46

*Bonner v. Nicholson*,
19 Vet. App. 188 (2005) ..............................................................20

*Bove v. Shinseki*,
25 Vet. App. 136 (2011) ...................................................... 25, 51–53

*Can. Lumber Trade All. v. United States*,
517 F.3d 1319 (Fed. Cir. 2008).............................................................10

*Celano v. Peake*,
22 Vet. App. 341 (2009) ..................................................................20

*Certain Former CSA Employees v. Dep't of Health & Human Servs.*,
762 F.2d 978 (Fed. Cir. 1985)...................................................... 43–44

*Cheney v. U.S. Dist. Ct. D.C.*,
542 U.S. 367 (2004) .................................................................. 41–42

*Consol. Edison Co. of N.Y. v. Richardson*,
233 F.3d 1376 (Fed. Cir. 2000).............................................................9

*Cooper v. Fed. Reserve Bank of Richmond*,
467 U.S. 867 (1984) .................................................................. 45–46

*Costanza v. West*,
12 Vet. App. 133 (1999) ............................................... 35, 37–38, 41

*Cox v. West*,
149 F.3d 1360 (Fed. Cir. 1998)......................................... 24, 41, 48

*DeLaRosa v. Peake*,
515 F.3d 1319 (Fed. Cir. 2008).............................................................9

*Disabled Am. Veterans v. Sec'y of Veterans Affairs*,
327 F.3d 1339 (Fed. Cir. 2003).............................................................32

*F.T.C. v. Dean Foods Co.*,
384 U.S. 597 (1966).............................................................48

*Ferguson v. West*,
No. 99-7035, 1999 WL 287545 (Fed. Cir. Apr. 16, 1999)......................... 19–20

*Forshey v. Principi*,
284 F.3d 1335 (Fed. Cir. 2002).............................................................18

*Freeman v. Shinseki*,
   24 Vet. App. 404 (2011) ..................................................................33

*Fritz v. Nicholson*,
   20 Vet. App. 507 (2006) .................................................................20

*Gebhart v. Peake*,
   289 F. App'x 402 (Fed. Cir. 2008) ..................................................28

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523 (2013) .............................................................. 17, 54

*Githens v. Shinseki*,
   676 F.3d 1368 (Fed. Cir. 2012)................................................. 26–27

*Haas v. Nicholson*,
   20 Vet. App. 257 (2006) ............................................................ 23–24

*Harrison v. Derwinski*,
   1 Vet. App. 438 (1991) ........................................... 22–23, 34, 36, 40

*Hartman v. Nicholson*,
   483 F.3d 1311 (Fed. Cir. 2007).......................................................40

*Harvey v. Brown*,
   6 Vet. App. 416 (1994) ...................................................................20

*Helvering v. Gowran*,
   302 U.S. 238 (1937).........................................................................35

*Henderson v. Brown*,
   10 Vet. App. 272 (1997) .................................................................34

*Henderson v. Shinseki*,
   562 U.S. 428 (2011).........................................................................51

*Hendler v. United States*,
   952 F.2d 1364 (Fed. Cir. 1991).........................................................9

*Holloway v. West*,
    No. 00-7038, 2000 WL 628837 (Fed. Cir. May 5, 2000) .................................19

*In re Paralyzed Veterans of America*,
    392 F. App'x 858 (Fed. Cir. 2010) ...................................................................41

*James B. Beam Distilling Co. v. Georgia*,
    501 U.S. 529 (1991) ................................................................................. 50–51

*Jet, Inc. v. Sewage Aeration Sys.*,
    223 F.3d 1360 (Fed. Cir. 2000) .......................................................................45

*Kremens v. Bartley*,
    431 U.S. 119 (1977) ........................................................................................16

*Lamb v. Principi*,
    284 F.3d 1378 (Fed. Cir. 2002) ................................................................ 26–28

*Lane v. West*,
    11 Vet. App. 506 (1998) ........................................................................... 52–53

*Lane v. West*,
    12 Vet. App. 220 (1999) ..................................................................................53

*Lefkowitz v. Derwinski*,
    1 Vet. App. 439 (1991) ............................................................ 22–23, 34, 36, 40

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ........................................................................................10

*Livingston v. Derwinski*,
    959 F.2d 224 (Fed. Cir. 1992) ................................................................. 18–19

*Local No. 8-6, Oil Chemical & Atomic Workers Int'l Union, AFL-CIO v. Missouri*,
    361 U.S. 363 (1960) ................................................................................. 46–47

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..........................................................................................12

vi

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................10

*McClellan v. Carland*,
    217 U.S. 268 (1910) ......................................................................41

Misc. Order 10-11, *In re: Timeliness of Appelas*,
    25 Vet. App. 109 (June 24, 2011) ............................................. 51–52

Misc. Order No. 21-11, *In re Timeliness of Appeals*
    (Vet. App. Dec. 20, 2011) ...........................................................52

*Moffitt v. Brown*,
    10 Vet. App. 214 (1997) ..............................................................20

*Murphy v. Hunt*,
    455 U.S. 478 (1982) ......................................................................14

*Myers Investigative & Sec. Servs, Inc. v. United States*,
    275 F.3d 1366 (Fed. Cir. 2002) ...................................................11

*Orion Tech., Inc. v. United States*,
    704 F.3d 1344 (Fed. Cir. 2013) ...................................................35

*Payne v. McDonald*,
    587 F. App'x 649 (Fed. Cir. 2014) ...............................................28

*Preiser v. Newkirk*,
    422 U.S. 395 (1975) ......................................................................10

*Ribaudo v. Nicholson*,
    20 Vet. App. 552 (2007) ...................................................... passim

*Scott v. Shinseki*,
    355 F. App'x 426 (Fed. Cir. 2009) ...............................................28

*Solze v. Shinseki*,
    26 Vet. App. 118 (2013) ......................................................... 32–33

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ............................................................. 13, 16–18

*Spencer v. Kemna*,
   523 U.S. 1 (1998) ......................................................................10

*Stoffel v. Shinseki*,
   527 F. App'x 940 (Fed. Cir. 2013) ....................................................52

*Szemraj v. Principi*,
   357 F.3d 1370 (Fed. Cir. 2004)........................................................43

*Teva Pharma. USA, Inc. v. Novartis Pharma. Corp.*,
   482 F.3d 1330 (Fed. Cir. 2007)........................................................47

*Tobler v. Derwinski*,
   2 Vet. App. 8 (1991) ...................................................................50

*Torrington Co. v. United States*,
   44 F.3d 1572 (Fed. Cir. 1995)................................................... 12, 14

*U.S. Parol Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ............................................................. 10, 17–18

*United States ex. rel. Sero v. Preiser*,
   506 F.2d 1115 (2d Cir. 1974)..........................................................49

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014).........................................................47

*Weinstein v. Bradford*,
   423 U.S. 147 (1975)...................................................................14

*Williams v. McDonald*,
   614 F. App'x 499 (Fed. Cir. 2015) ....................................................28

*Young v. Shinseki*,
   25 Vet. App. 201 (2012) .............................................................. 15

## Statutes

28 U.S.C. § 1651 ...................................................................................48

28 U.S.C. § 2111 ...................................................................................43

28 U.S.C. § 2412 ...................................................................................15

29 U.S.C. § 216 .....................................................................................17

38 U.S.C. § 1110 ...................................................................................30

38 U.S.C. § 5103A ........................................................................... 30–31

38 U.S.C. § 5108 ...................................................................................51

38 U.S.C. § 5110 ...................................................................................30

38 U.S.C. § 7104 ...................................................................................32

38 U.S.C. § 7105 ............................................................................. 30, 32

38 U.S.C. § 7111 ...................................................................................52

38 U.S.C. § 7252 ............................................................................. 20, 24

38 U.S.C. § 7261 ...................................................................................20

38 U.S.C. § 7292 ............................................................................ passim

## Rules

Fed. R. Evid. 201 ....................................................................................5

Fed. R. Civ. P. 23 .......................................................... 17–18, 49, 53

R. Ct. App. Vet. Cl. 3.............................................................................25

R. Ct. App. Vet. Cl. 15...........................................................................25

## **Regulations**

5 C.F.R. § 1201.27 .......................................................................... 43–44

38 C.F.R. § 3.12 ...................................................................................6

38 C.F.R. § 3.156 .................................................................................31

38 C.F.R. § 19.37 .................................................................................31

38 C.F.R. § 20.1304 .............................................................................31

## **Other Authorities**

Annual Report, United States Court of Appeals for Veterans Claims,
October 1, 2013 to September 30, 2014 (Fiscal Year 2014) ................................. 13

Pub. L. 112-154 § 501, 126 Stat. 1165 (Aug. 6, 2012)............................................32

## STATEMENT OF RELATED CASES

This appeal, No. 15-7092, is consolidated with Appeal No. 15-7106. Both appeals stem from judgments entered in the United States Court of Appeals for Veterans Claims (Veterans Court) in Case No. 15-1280, brought by Mr. Monk. A separate appeal, also from Case No. 15-1280, was previously identified as a companion case to the current appeal but was dismissed by the Court on September 11, 2015 for failure to prosecute. *Van Allen v. McDonald*, No. 15-7095 (Sept. 11, 2015), ECF No. 12.

Pursuant to Rule 47.5, appellee's counsel states that she is unaware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title. Appellee's counsel is also unaware of any case pending in this or any other court that may directly affect or be affected by this Court's decision in this appeal.

2015-7092

# IN THE UNITED STATES
# COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CONLEY F. MONK, JR.,

Claimant-Appellant,

v.

ROBERT A. McDONALD, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims
In Case No. 15-1280, Judge Lawrence B. Hagel

BRIEF FOR RESPONDENT-APPELLEE, UNITED STATES

## STATEMENT OF THE ISSUES

1.    Whether Mr. Monk has standing to continue to pursue this appeal on behalf of the purported class when his individual claim is moot.

2.    Whether this Court has jurisdiction to review this appeal pursuant to 38 U.S.C. § 7292.

3.    Whether the Veterans Court correctly concluded Mr. Monk had not demonstrated aggregated treatment of his petition for writ of mandamus was appropriate under the circumstances.

## STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS

Claimant-appellant, Conley F. Monk, Jr., filed a petition for writ of mandamus in the United States Court of Appeals for Veterans Claim (Veterans Court), on behalf of himself and similarly situated veterans, seeking an order requiring respondent-appellee, Robert A. McDonald, Secretary of Veterans Affairs (Secretary), to grant Mr. Monk's claim for disability benefits or certify his appeal to the Board of Veterans' Appeals (board) within 30 days.  JA011–12.[1]

The Veterans Court, *sua sponte*, denied the portion of Mr. Monk's petition seeking certification of a class action, determining that Mr. Monk "has not demonstrated that a class action or aggregate resolution is permitted here."  JA003.  Mr. Monk seeks review of the Veterans Court's denial of class certification.[2]

## I.    Procedural History

In February 2012, Mr. Monk filed a claim for service-connected disability benefits with the United States Department of Veterans Affairs (VA) Regional

---

[1] "JA__" refers to a page in the parties' joint appendix.

[2] The Veterans Court separately denied Mr. Monk's individual petition, JA138–141, and Mr. Monk timely appealed, Notice of Docketing, *Monk v. McDonald*, No. 15-7106 (Fed. Cir. Aug. 11, 2015), ECF No. 1.  While his appeal was pending, Mr. Monk was awarded disability benefits with a 100% disability rating.  Opening Brief of Claimant Appellant at 2 n.1 (Oct. 16, 2015), ECF No. 17 (Op. Br.).  Mr. Monk concedes this award of benefits mooted the claim concerning his individual petition.  *Id.*

Office (RO) in Hartford, Connecticut.  JA136.  On August 22, 2012, the VA RO

denied Mr. Monk's claim based on the nature of his discharge from service.  *Id.*

On December 17, 2012, the VA RO received additional documentation regarding

Mr. Monk's claim and again denied the claim based on the nature of his discharge.

*Id.*  On February 14, 2013, the VA RO sent notification of the denial to Mr. Monk

by letter, which Mr. Monk apparently received some time in the spring

of 2013.  *Id.*; JA138.

On July 16, 2013, Mr. Monk filed a Notice of Disagreement (NOD)

contesting the August 2012 denial of claims and requesting a hearing with a

decision review officer.  JA031–34.  In February 2014, Mr. Monk testified before a

decision review officer and presented additional evidence supporting his

claim.  JA139.

On April 6, 2015, Mr. Monk filed a "Petition for Extraordinary Equitable

and Collective Relief" in the Veterans Court, contending that the Secretary's

failure to decide his claim for benefits within twelve months of filing his NOD

violated his due process rights and constituted an arbitrary refusal to

act.  JA009, JA028.  The petition sought relief on behalf of Mr. Monk and "all

other veterans in medical or financial need who have not received a decision within

twelve months of timely submitting an NOD."  JA011–12.

On May 8, 2015, the Veterans Court issued an order, *sua sponte*, denying Mr. Monk's request for class certification and requiring the Secretary to respond to his mandamus petition within 30 days. JA001. On May 27, 2015, the Veterans Court withdrew its non-dispositive May 8, 2015 order and replaced it with a dispositive order denying class certification and a non-dispositive order requiring the Secretary to respond to Mr. Monk's petition, allowing Mr. Monk to immediately appeal the dispositive denial of class certification. *Id.* On May 27, 2015, Mr. Monk filed a timely notice of appeal of the class certification order. JA008.

On July 8, 2015, the Veterans Court issued an order denying Mr. Monk's individual petition, holding that Mr. Monk had "not demonstrated that the alleged delay [was] so extraordinary, given the demands and resources of the Secretary, that it [was] equivalent to an arbitrary refusal by the Secretary to act." JA141. On July 30, 2015, Mr. Monk filed a timely notice of appeal of the order denying his individual petition. *See* Notice of Docketing, *Monk v. McDonald*, No. 15-7106 (Fed. Cir. Aug. 11, 2015), ECF No. 1.

On August 13, 2015, this Court consolidated Mr. Monk's two appeals. Order at 2 (Aug. 13, 2015), ECF No. 12.

II.    <u>Factual Background</u>[3]

Mr. Monk served in the United States Marine Corps during the Vietnam War era between 1968 and September 1970, when he received an other than honorable discharge in lieu of a court marshall for various offenses. JA138. In late 2011, Mr. Monk was diagnosed with post-traumatic stress disorder (PTSD) by Dr. Brandy Lee, Outpatient Psychiatrist at Connecticut Mental Health Center and Assistant Clinic Professor at Yale School of Medicine. JA013. Dr. Lee concluded

---

[3] The Secretary briefly addresses the facts underlying Mr. Monk's individual petition to provide context to the circumstances surrounding this appeal. The Secretary notes that in his 17-page Statement of Facts, Mr. Monk seeks judicial notice of several dozen "facts" he contends are relevant to his appeal. *See, e.g.*, Op. Br. at 4 n.2. Although many of these assertions are not the types of "adjudicative facts" eligible for judicial notice, Fed. R. Evid. 201 (allowing a court to take judicial notice of an adjudicative "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"), the Secretary will not individually respond to Mr. Monk's numerous requests for judicial notice because few, if any, of the facts in dispute are relevant to the issues on appeal.

The Secretary further notes he does not dispute that, in 2014: (1) veterans who filed an NOD waited an average of 330 days before receiving a Statement of the Case necessary to complete the appeals process; (2) veterans who initiated a formal appeal with the Veterans Benefits Administration (VBA) waited an average of 681 days for the VBA to certify appeals to the board; and (3) veterans whose appeals were certified to the board waited an average of 357 days for the board to decide their appeals, totaling, on average, 1,368 days from the filing of an NOD to the board's decision on appeal. *See* Op. Br. at 10. The Secretary also does not dispute that many thousands of veterans are currently waiting for appeal decisions from the board. *See* Op. Br. at 11, 16.

that Mr. Monk's symptoms of PTSD had a "clear onset with [Mr. Monk's] Vietnam War experience." JA013.

Following his diagnosis, Mr. Monk filed a claim for disability benefits for PTSD with the Hartford, Connecticut VA RO. JA136. The Hartford VA RO denied Mr. Monk's claim because of his other than honorable discharge[4] and Mr. Monk filed a timely NOD. JA138–39.

While awaiting a decision concerning his claim for benefits from the Hartford VA RO, in July 2012, Mr. Monk applied to the Board for Correction of Naval Records (BCNR) for an upgrade to his discharge status based in part on his PTSD diagnosis. JA015–16; *see also* Complaint ¶ 40, *Monk v. Mabus*, No. 14-cv-0260 (D. Conn. Mar. 3, 2014), ECF No. 1 (Dist. Ct. Compl.). On March 3, 2014, having failed to receive a decision from the BCNR and while his appeal of the denial of his claim for benefits was pending with the board, Mr. Monk filed a class action complaint in the United States District Court for the District of Connecticut challenging, among other things, the alleged constructive denial of his application to the BCNR for a discharge upgrade in light of his PTSD diagnosis. JA015–16;

---

[4] Pension, compensation and dependency and indemnity compensation are not payable unless the period of service on which the claim was based was terminated by discharge or release under conditions other than dishonorable. 38 C.F.R. § 3.12(a).

Dist. Ct. Compl. ¶ 187 & at 37 (Prayer for Relief).  On November 14, 2014, the

district court granted the defendants' motion for a voluntary remand of Mr. Monk's

claim to the BCNR with the instructions to review his claim "in accordance with

the principles discussed in the memorandum issued by the Secretary of Defense on

September 3, 2014," regarding discharge upgrade applications of veterans asserting

they suffer from PTSD.  JA015–16; Order on Motion for Voluntary Remand at 2–

3, *Monk v. Mabus*, No. 14-cv-0260 (D. Conn. Nov. 14, 2014), ECF No. 48.

While Mr. Monk's application for a discharge upgrade was pending at the

BCNR, Mr. Monk filed his petition for a writ of mandamus at the Veterans Court,

seeking relief on behalf of himself and all veterans whose appeals had been

pending undecided for more than twelve months after filing an NOD.  JA011.  The

petition asked the Veterans Court to require the Secretary to either grant him

benefits or certify his appeal to the board within 30 days, and to do the same for all

"similarly situated veterans."  *Id.*  In the event the Secretary did not do so, the

petition demanded either a "summary grant of the benefits sought" or that the

Secretary be held in contempt.  *Id.*

On May 8, 2015, the BCNR upgraded Mr. Monk's discharge status to a

general discharge under honorable conditions.  JA140.  On September 11, 2015, in

consideration of Mr. Monk's upgraded discharge status, the Hartford VA RO

granted Mr. Monk's claim for benefits, finding him 100% disabled.  Opening Brief

of Claimant Appellant at ADD 6 (Oct. 16, 2015), ECF No. 17 (Op. Br.).

## SUMMARY OF THE ARGUMENT

This Court lacks jurisdiction to consider Mr. Monk's arguments on appeal.

This Court does not possess jurisdiction pursuant to Article III of the United States

Constitution to consider Mr. Monk's challenge to the denial of class certification

because—as Mr. Monk concedes—his individual claim for relief is moot and none

of the exceptions to the mootness doctrine applies.  Even if Mr. Monk could pursue

the claims of the purported class, Mr. Monk ultimately seeks review of equitable

and factual determinations made by the Veterans Court.  This Court does not

possess jurisdiction to review either the equitable or factual determinations of the

Veterans Court.

In the alternative, if the Court concludes it possesses jurisdiction to entertain

Mr. Monk's appeal notwithstanding the significant procedural hurdles he faces, the

Court should affirm the decision below because the Veterans Court correctly

determined Mr. Monk had not demonstrated aggregated treatment of the claims he

presented was appropriate in these circumstances.

# ARGUMENT

## I.  Standard Of Review

The Court reviews questions of statutory and regulatory interpretation *de novo*. *Andrews v. Principi*, 351 F.3d 1134, 1136 (Fed. Cir. 2003).  The Court reviews a denial of class certification for abuse of discretion.  *Consol. Edison Co. of N.Y. v. Richardson*, 233 F.3d 1376, 1379 (Fed. Cir. 2000).  A court abuses its discretion when "(1) the court's decision is clearly unreasonable, arbitrary, or fanciful; (2) the decision is based on an erroneous conclusion of the law; (3) the court's findings are clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision."  *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991).

This Court "must affirm a Veterans Court decision unless it is '(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law.'"  *DeLaRosa v. Peake*, 515 F.3d 1319, 1321 (Fed. Cir. 2008) (quoting 38 U.S.C. § 7292(d)(1)).

II.    This Court Does Not Possess Jurisdiction To Review This Appeal Because
       There Is No Live Case Or Controversy

Article III of the United States Constitution requires that a party bringing

suit possess a live case or controversy—that is, he "must have suffered, or be

threatened with, [1] an actual injury [2] traceable to the defendant and [3] likely to

be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7

(1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

An actual controversy must exist at all stages of review. *See, e.g.*, *Preiser v.

Newkirk*, 422 U.S. 395, 401 (1975). At the outset of litigation, a plaintiff must

demonstrate his personal stake in the alleged claim to establish standing; the

mootness doctrine requires that he retain that personal stake for the duration of the

litigation. *U.S. Parol Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (referring to

mootness as "the doctrine of standing set in a time frame"). A claim becomes

moot when it "cease[s] to present a 'case or controversy' due to developments

during litigation." *Can. Lumber Trade All. v. United States*, 517 F.3d 1319, 1338

(Fed. Cir. 2008). Mr. Monk, as the party invoking federal jurisdiction, bears the

burden of demonstrating the elements necessary to establish standing. *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Arizonans for Official

English v. Ariz.*, 520 U.S. 43, 66–67 (1997) (standing and mootness are each

threshold issues relating to Article III jurisdiction); *Myers Investigative & Sec. Servs, Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (same).

Mr. Monk concedes his individual claim for relief is moot.  Op. Br. at 2 n.1. The sole injury for which Mr. Monk sought relief with the Veterans Court was the "VA's delay in rendering a decision," allegedly constituting a "violat[ion of] his right to due process."  JA024.  The sole remedy sought by Mr. Monk was an order requiring the Secretary to "process his application expeditiously," that is, "to grant [Mr. Monk] his benefits or certify his appeal to the [board] within 30 days." JA010–11.  VA has already adjudicated his claim on the merits and awarded him benefits.  *See* Op. Br. ADD 6.  Accordingly, Mr. Monk has not (1) suffered any actual injury (2) traceable to the Secretary and (3) likely to be redressed by a favorable decision in this Court.  Mr. Monk has not—and cannot—demonstrate that any exception to mootness applies, so the Court must dismiss his appeal.

A.    The Challenged Action Is Not "Capable Of Repetition, Yet Evading Review"

Mr. Monk erroneously contends he may continue to litigate the class certification issue because challenges to VA delays are "inherently transitory" and thus "capable of repetition, yet evading review."  Op. Br. at 2 n.1.  The capable-of-repetition doctrine is a limited exception to the mootness doctrine that only applies in certain specific circumstances, none of which is present here.

11

Despite the cursory treatment Mr. Monk provides to mootness and his conclusory statements regarding the Court's jurisdiction, Op. Br. at 2 n.1, "the capable-of-repetition doctrine applies only in *exceptional situations*, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality," *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (emphasis added). "To qualify for this exception, the challenged action must meet two conditions. First, the action must in its duration be too short to be fully litigated prior to its cessation or expiration. Second, there must be a reasonable likelihood that the party will again suffer the [injury] that gave rise to the suit." *Torrington Co. v. United States*, 44 F.3d 1572, 1577 (Fed. Cir. 1995) (internal quotation marks, modifications, and citations omitted) (determining an action was capable of evading review because an opportunity to repeat the allegedly unlawful action arose three times before court heard oral argument on the appeal and the record showed litigation "cannot keep pace with the rate of administrative reviews," when new unlawful action might again occur). Mr. Monk has failed to demonstrate either of these two conditions.

First, the challenged action—delay in the resolution of veterans benefits claims appealed to the board—is not "too short to be fully litigated prior to cessation." *Id.* Mr. Monk contends a veteran "appeal[ling] an initial disability compensation decision will wait, on average, nearly *forty-six months* before the

[board] decides the appeal." Op. Br. at 7 (emphasis in original) (citing Board of Veterans' Appeals Annual Report Fiscal Year 2014 at 30). However, during the same time period, it took the Veterans Court, on average, a mere 47 *days* to dispose of a petition. Annual Report at 3, United States Court of Appeals for Veterans Claims, October 1, 2013 to September 30, 2014 (Fiscal Year 2014).[5] It is impossible to reconcile how the alleged duration of the challenged action—delays of nearly four years following the filing of an NOD before resolution by the board—is too short to fully litigate a petition for a writ of mandamus with the Veterans Court—a process taking, on average, fewer than seven weeks.

Accordingly, the claims of the putative class are not inherently transitory for the purposes of the capable-of-repetition doctrine, so the appeal must be dismissed for lack of jurisdiction. "In cases in which the alleged harm would not dissipate during the normal time required for resolution of the controversy, the general principles of [Article] III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975); *see also Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1346-47 (Fed. Cir. 2003) ("In this case, there is no reason to believe that the multiple 30-

---

[5] Mr. Monk seeks judicial notice of this report. Op. Br. at 6; *see also id.* at 17, 36 n.17.

13

month stay issue will normally evade review because of its short duration."). Mr. Monk has failed to demonstrate that the first condition is satisfied.

Second, Mr. Monk cannot show that he will likely be subject to the same challenged action. *Torrington*, 44 F.3d at 1577. A "mere physical or theoretical possibility" that an action might reoccur is insufficient to overcome mootness; rather, "there must be a 'reasonable expectation' or 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)); *see also Alvarez v. Smith*, 558 U.S. 87, 93-94 (2009) ("Yet here . . . nothing suggests that the individual plaintiffs will likely again prove subject to the State's seizure procedures.") (internal citations omitted). The unlikelihood of the action recurring is particularly true given the Veterans Court's conclusion that Mr. Monk's own initiation of a claim at the BCNR "thwarted" the VA's "continuous[] attempt[s] to continue the adjudication of his claims" for disability benefits. JA141. It is implausible that Mr. Monk will be faced with similar delay even if, as suggested in his brief, Op. Br. at 16 n.12, he files a new NOD regarding the effective date of the award of his benefits because the VA's attempts to adjudicate his claims will no longer be "thwarted by the Board of Correction of

14

Naval Records's need for Mr. Monk's medical records," a situation created by Mr.

Monk himself, JA141.[6]

Mr. Monk cannot rescue his claim by arguing that other members of the

class remain subject to the challenged action so Mr. Monk need not show he will

_____

[6] Mr. Monk cites to a dissenting opinion in *Young v. Shinseki*, 25 Vet.
App. 201 (2012) (en banc) to support his assertion that challenges to VA delay
through mandamus petitions are "inherently transitory," because "the great
majority of the time the Secretary responds [to a petition for a writ of mandamus]
by correcting the problem within the short time allotted for a response, and the
petition is dismissed as moot." Op. Br. at 2 n.1 (quoting *Young*, 25 Vet. App.
at 215 (Lance, J., dissenting). The *Young* case is inapposite and, in any event, does
not support Mr. Monk's contention. In *Young*, the Veterans Court considered
whether it possessed jurisdiction over the appeal of a board decision referring,
rather than remanding, part of a claim for benefits to the VA RO. 25 Vet. App.
at 202. The Veterans Court held it possessed jurisdiction over both the denied part
of the claim and the portion of the claim that had been referred to the VA RO. *Id.*

The *Young* court did not address whether a petition for a writ of mandamus
was transitory in the context of the capable-of-repetition doctrine or how mootness
may be overcome in the Veterans Court because mootness was not at issue on
appeal. *See, e.g.*, *id.* at 205 ("Finally, in light of statements made by the dissent,
we note that the underlying appeal is not being dismissed as moot."). The
Veterans Court was not even presented with a mandamus petition; rather, the court
adjudicated a motion to dismiss a request for attorneys' fees pursuant to the Equal
Access to Justice Act, 28 U.S.C. § 2412(d). *Id.* at 201–02. Judge Lance, in a
dissent criticizing the majority holding on jurisdiction, urged that the proper means
to challenge a referred claim was not through direct appeal but through a petition
for writ of mandamus because petitions are adjudicated, on average, much more
quickly than direct appeals. *Id.* at 215 (Lance, J., dissenting) ("Thus, the petition,
in practice, is a tool far better than the direct appeal for obtaining expeditious
processing of the underlying issue."). Mr. Monk cannot rely on *dicta* in a
dissenting opinion from a lower court to support his allegation that the claims of
the purported class are "inherently transitory."

personally suffer the same injury again.  Although the existence of absent class members may satisfy the second requirement of the capable-of-repetition doctrine if at least one member remains subject to the challenged action, a class representative may only use this fact to overcome  his own mooted claim *after* a class has been properly certified.  *Kremens v. Bartley*, 431 U.S. 119, 132–33 (1977) ("[O]nly a 'properly certified' class . . . may succeed to the adversary position of a named representative whose claim becomes moot");  *Sosna*, 419 U.S. at 399 ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant.  We are of the view that this factor significantly affects the mootness determination.").  Here, there is no properly certified class, so Mr. Monk cannot rely on the fact that members of the putative class may still have live claims to establish Article III jurisdiction and rescue his claim from mootness when there is no reasonable expectation he will again face the challenged delay.  Mr. Monk has failed to demonstrate the second condition is satisfied.

>    B.    Mr. Monk May Not Continue To Litigate Class Certification Issues Following The Loss Of His Personal Stake In The Outcome Of This Litigation

Mr. Monk also mistakenly argues that, as a putative class representative, he may continue to "litigate the class certification issues despite loss of his personal

stake in the outcome of the litigation."  Op. Br. at 2 n.1 (relying on *Geraghty*, 445 U.S. at 403–04).  Again, the requisite circumstances to overcome the mootness doctrine are entirely absent here.

In *Geraghty*, the Supreme Court held that a purported class representative may maintain a "'personal stake' in obtaining class certification" even though his or her individual claims are moot, allowing review of a denial of class certification (but not the underlying merits of the putative class's claims).  445 U.S. at 403–04. However, the personal interest sufficient to overcome mootness is derived explicitly from Rule 23 of the Federal Rules of Civil Procedure "giv[ing] the proposed class representative the *right* to have a class certified if the requirements of the Rules are met."  *Id.* at 403 (emphasis added).  There is no dispute that Rule 23 does not apply to actions in the Veterans Court and neither Mr. Monk nor *amici curiae* argue a veteran has an indisputable right to have a class certified if particular conditions are met.

Mr. Monk does not possess a personal stake in obtaining class certification as it was understood in *Geraghty* and its progeny.  *See, e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (refusing to extend the *Geraghty* exception to a putative class action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), because "fundamentally, essential to [the] decisions in

17

*Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status once it is certified under Rule 23").

Absent a live controversy concerning Mr. Monk's individual claim or any right to obtain certification upon satisfaction of certain conditions such that Mr. Monk maintains a personal stake in its outcome, this Court does not possess Article III jurisdiction to entertain this appeal.

III.    This Court Does Not Possess Jurisdiction Pursuant To 38 U.S.C. § 7292

This Court's jurisdiction is limited by 38 U.S.C. § 7292.  The Court does not possess jurisdiction to review a challenge to a factual determination or the application of law to the facts of a particular case.  38 U.S.C. § 7292(d)(2).  The Court may only "review of the decision [of the Veterans Court] with respect to the validity of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision."  38 U.S.C. § 7292(a); *see also Forshey v. Principi*, 284 F.3d 1335, 1338 (Fed. Cir. 2002) (en banc).  This Court's "jurisdictional scheme must be strictly construed in harmony with [the Court's] congressional mandate, and [the Court] may not, even in the interest of justice, extend [its] jurisdiction where none exists."  *Livingston v. Derwinski*, 959 F.2d 224, 225 (Fed. Cir. 1992) (internal citations omitted).

The Veterans Court did not address the validity of any statute or regulation and did not interpret a statute or regulation by elaborating on its meaning. Accordingly, this Court does not possess jurisdiction to entertain Mr. Monk's appeal.

### A.    The Court Does Not Possess Jurisdiction To Review Decisions Sounding In Equity

The Court does not possess jurisdiction to consider Mr. Monk's arguments that the Veterans Court should have exercised its equitable powers to aggregate the claims of the purported class. Op. Br. at 37–40, 45–49. It is well established that this Court does not possess jurisdiction to review decisions sounding in equity. *Livingston*, 959 F.2d at 226 ("In the absence of a challenge to the validity of a statute or a regulation, or the interpretation of a constitutional or statutory provision or a regulation, we have no authority to consider the appeal."); *see also Holloway v. West*, No. 00-7038, 2000 WL 628837, at *2 (Fed. Cir. May 5, 2000) (non-precedential) ("[The appeal] does not contest the validity of a statute or a regulation, or raise a constitutional issue. This court does not have jurisdiction to review a decision by the CAVC sounding in equity.") (per curiam). *Ferguson v. West*, No. 99-7035, 1999 WL 287545, at *1 (Fed. Cir. Apr. 16, 1999) (non-precedential) ("Ferguson states that 'the law of equity should have been applied.'

This court lacks jurisdiction to conduct such a review; therefore, this appeal must be dismissed.").

Even if this Court possessed such jurisdiction, it should reject Mr. Monk's arguments because the Veterans Court is not a court in equity, thus it lacks the authority to grant the relief sought by Mr. Monk. *See generally* 38 U.S.C. §§ 7252, 7261; *Celano v. Peake*, 22 Vet. App. 341, 352 (2009) ("[T]he Court notes that, to the extent the appellant does suggest that equity requires that benefits be awarded, the Secretary's argument that this Court is without equitable authority to award benefits under these circumstances is correct."); *Bonner v. Nicholson*, 19 Vet. App. 188, 196 (2005) ("This Court, however, may not award equitable relief, no matter how compelling the facts."); *Moffitt v. Brown*, 10 Vet. App. 214, 225 (1997) ("However, this Court is not a court of equity and cannot provide equitable relief.") (citing *Harvey v. Brown*, 6 Vet. App. 416, 425 (1994)); *see also Fritz v. Nicholson*, 20 Vet. App. 507, 511 (2006) (same).

This Court does not possess jurisdiction to consider Mr. Monk's arguments that the Veterans Court erred in declining to use equitable powers to aggregate the claims of the purported class because this Court may not review equitable decisions regarding veterans' claims.

B.     The Veterans Court Applied Veterans Law To The Facts Alleged
       In Mr. Monk's Petition

The Veterans Court correctly "determin[ed] that Mr. Monk has not demonstrated that a class action or aggregate resolution is permitted *here*."  JA003 (emphasis added).  In doing so, the Veterans Court inevitably made factual findings, such as whether the proposed class is numerous, sharing common legal and factual questions related to veterans' law, and adequately represented by Mr. Monk, whether his claims are typical of the class, and whether the requested relief was an appropriate remedy.

Mr. Monk contends the Veterans Court reached the much broader conclusion that it lacked the *authority* to aggregate claims under *any* circumstances.  *See* JA003–04; Op. Br. at 6.[7]  Were this the holding of the Veterans Court, such a holding could present a legal question falling within this

---

[7] In their briefs, *amici curiae* appear to have adopted Mr. Monk's interpretation.  *See* Corrected *Amicus Curiae* Brief of the American Legion, the Hispanic American Veterans of Connecticut, the Iraq and Afghanistan Veterans of America, Military Order of the Purple Heart, National Veterans Legal Services Program, Stetson University's Veterans Law Institute, and Vietnam Veterans of American, Inc. (collectively Veterans Organizations) in Support of Appellant at 13 (Dec. 4, 2015), ECF No. 60 (Veterans Orgs. Br.); Corrected Amicus Brief and Appendix of 15 Administrative Law, Civil Procedure, and Federal Courts Professors in Support of Appellant and Reversal (Law Professors) at 3 (Dec. 4, 2015), ECF No. 62 (Law Professors Br.); Corrected Brief of Amici Curiae Former General Counsels of the Department of Veterans Affairs Will A. Gunn and Mary Lou Keener at 4 (Dec. 16, 2015), ECF No. 66 (Former VA Counsel Br.).

Court's jurisdiction pursuant to § 7292(d). *See, e.g.*, *Beasley v. Shinseki*, 709 F.3d 1154, 1158 (Fed. Cir. 2013) (this Court has jurisdiction to review a decision by the Veterans Court whether to grant a mandamus petition raising a "non-frivolous legal question" but not the factual merits of a veteran's claim). However, this broad interpretation of the opinion is inconsistent with the decisions relied upon by the Veterans Court, the rules governing the Veterans Court, and other binding precedent allowing for the limited aggregated resolution of claims under certain conditions.

The Veterans Court primarily relied on two decisions in which the Veterans Court stated that establishing a class action procedure would be "unmanageable" and "unnecessary." JA003–04 (citing *Lefkowitz v. Derwinski*, 1 Vet.App. 439 (1991) (en banc) and *Harrison v. Derwinski*, 1 Vet.App. 438 (1991) (en banc)). In *Lefkowitz* and *Harrison*, the Veterans Court held, en banc, that it "lack[ed] the power to adopt a rule *of the kind proposed* for class actions." *Lefkowitz* 1 Vet. App. at 440; *Harrison*, 1 Vet. App. at 438. The holdings in *Lefkowitz* and *Harrison* were thus explicitly limited to the class action mechanisms actually proposed by the petitioners in those cases. The Veterans Court did not address in either decision whether it possessed the abstract authority to entertain class actions pursuant to the All Writs Act—a question left conspicuously open, as noted in the concurring opinions. *Lefkowitz*, 1 Vet. App. at 440 (Kramer, J., concurring)

22

("[U]nder the All Writs Act . . .the Court *may* have the power to entertain class actions *in appropriate situations*.") (emphases added); *Harrison*, 1 Vet. App. at 439 (Kramer, J., concurring) (same). The Veterans Court has ostensibly resolved this question of its abstract authority to provide aggregated relief in subsequent cases in which it actually did so.

For example, the Veterans Court provided collective mandamus relief when an individual was able to demonstrate that he was entitled to extraordinary relief on behalf of himself and similarly situated veterans. *Ribaudo v. Nicholson*, 20 Vet. App. 552, 561 (2007) (en banc).[8] In *Ribaudo*, the petitioner sought a writ ordering the Secretary to rescind a memorandum staying board proceedings that were affected by the Veterans Court decision in *Haas v. Nicholson*, 20 Vet. App. 257 (2006), pending the Secretary's appeal of the *Haas* decision to this Court. 20 Vet. App. at 553.

The petitioner challenged the memorandum as unlawful and requested the Veterans Court order the board "to decide *Haas*-like cases forthwith." *Id.* The Veterans Court granted the petition, ordered the memorandum rescinded, and

--------

[8] It is worth noting that the en banc decision in *Ribaudo*, unlike the single-judge decision challenged by Mr. Monk in this appeal, is binding precedent on the Veterans Court. *See Bethea v. Derwinski*, 2 Vet. App. 252, 254 (1992) ("A single-judge disposition is not binding in another case before a single judge or a panel.").

instructed the Secretary to "proceed to process the appeals that were stayed in accordance with that unlawful memorandum 'in regular order according to [their] place on the docket' and [to] apply this Court's decision in *Haas* to those appeals." *Id.* at 561 (first modification in original). The Veterans Court provided the individual petitioner with relief identical to that provided to the absent individuals also affected by the memorandum. *Id.* ("The Secretary will decide Mr. Ribaudo's appeal 'in regular order according to its place upon the docket,' and will apply this Court's decision in *Haas*.").[9]

Further, the Veterans Court has adopted several procedural mechanisms for aggregating claims under limited circumstances in its rules, which both Mr. Monk and *amici curiae* apparently fail to appreciate. *See, e.g.*, Op. Br. at 22; Veterans Orgs. Br. at 5; Law Professors Br. at 3; Former VA Counsel Br. at 26. In addition to the miscellaneous aggregated relief provided by the *Ribaudo* court, the Veterans

---

[9] We express no opinion as to how the Veterans Court's holding in *Ribaudo* may be applied in future cases. However, to the extent the Veterans Court implicitly concluded its authority to aggregate the injunctive relief sought by Mr. Ribaudo was permitted pursuant to the All Writs Act, we note that any such authority is necessarily subject to the jurisdictional limitations imposed by 38 U.S.C. § 7252. *See Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998) ("It is well established that the [All Writs Act] does not expand a court's jurisdiction."); *Am. Legion v. Nicholson*, 21 Vet. App. 1, 7 (2007) (en banc) ("Thus, the [Veterans] Court has jurisdiction to issue a writ of mandamus only if granting the petition could lead to a final [b]oard decision for the petitioner over which the Court would have jurisdiction.").

Court utilizes various mechanisms for collective adjudication, including joinder, consolidation, and intervention.

For example, the Rules of the United States Court of Appeals for Veterans Claims (R. Ct. App. Vet. Cl.), allow joinder.  R. Ct. App. Vet. Cl. 3(d) (allowing for multiple appeals to proceed as a single appeal "[i]f more than one person is entitled to appeal from a decision of the Board and their interests make joinder practicable").

Likewise, the Veterans Court allows consolidated appeals.  R. Ct. App. Vet. Cl. 3(e) ("Appeals may be consolidated by order of the Court on its own initiative or on a party's motion."); *see also Bove v. Shinseki*, 25 Vet. App. 136, 137 (2011) (consolidating four cases "for the sole purpose of addressing whether the 120–day filing period is subject to equitable tolling and, if so, whether the circumstances in each case warrant equitable tolling").

The Veterans Court allows intervention, including for petitions for writs of mandamus.  R. Ct. App. Vet. Cl. 15(d) ("A person who seeks to intervene in a petition for writ of mandamus shall submit for filing with the Clerk a motion for permission to intervene . . . contain[ing] a concise statement of the interest of the moving person or party and the grounds upon which he or she seeks intervention.").

In light of this authority, the Veterans Court decision to deny Mr. Monk's request for aggregated resolution must be viewed as an as-applied rejection, consistent with this prior precedent and cabined to the particular facts and circumstances alleged by Mr. Monk.  Because the only issue presented, given the as-applied nature of the decision, involves a challenge to whether aggregation was appropriate under the factual circumstances alleged by Mr. Monk, the Court lacks jurisdiction to review this holding.  38 U.S.C. § 7292(d).

C.    The All Writs Act Cannot End Run The Requirements
Of § 7292(d)

Mr. Monk cannot establish jurisdiction pursuant to the All Writs Act in the absence of any jurisdictional basis conferred by § 7292(d). This Court has limited jurisdiction to review the Veterans Court's denial of a writ of mandamus; it may review challenges involving a constitutional claim or the interpretation of a regulation or statute, but not the factual merits of a veteran's claim.  *Lamb v. Principi*, 284 F.3d 1378, 1381 (Fed. Cir. 2002); *see also Beasley*, 709 F.3d at 1158 (this Court has jurisdiction to review a decision by the Veterans Court whether to grant a mandamus petition raising a "non-frivolous legal question" but not the factual merits of a veteran's claim); *Githens v. Shinseki*, 676 F.3d 1368, 1371-72 (Fed. Cir. 2012) ("This court has jurisdiction to review a Veterans Court decision if it addresses . . . issues of interpretation if the Veterans Court elaborated upon the

meaning of a statute or regulation and the decision depended on that interpretation."). Mr. Monk has not demonstrated that the circumstances presented here fall into the Court's limited jurisdiction.

In *Lamb*, the Court rejected the assertion that *every* challenge to the Veterans Court's application of the All Writs Act falls outside the Court's jurisdiction because such challenges necessarily involve the application of law to facts. 284 F.3d at 1381–82. However, the Court iterated the basic propositions that the Veterans Court is the "final arbiter" of the "factual details of veterans benefits cases" and that Congress has also insulated from review challenges to the application of the "laws and regulations relating to veterans cases that the Veterans Court applies and administers." *Id.*

The *Lamb* Court did not hold that review of the denial of a writ of mandamus is available even where such review involves only a challenge to the Veterans Court's application of veterans law to the facts of a particular case. *Id.* at 1381 (noting that "two of [Mr. Lamb's] contentions are not in that category"). Rather, the Court reviewed the Veterans Court's application of the All Writs Act to the facts of Mr. Lamb's case only after noting that Mr. Lamb presented constitutional and statutory interpretation issues otherwise within the Court's jurisdiction. *Id.* The Court's more recent decision in *Beasley* is not to the

27

contrary.  *See* 709 F.3d at 1158 (distinguishing between genuine legal issues and factual disputes).

Accordingly, § 7292(d)(2) continues to be the generally applicable rule. And subsequent panels of this Court have dismissed appeals from denials of writs of mandamus where entitlement to the writ requires review of the factual merits of the underlying claim.  *See, e.g.*, *Payne v. McDonald*, 587 F. App'x 649, 651 (Fed. Cir. 2014); *Scott v. Shinseki*, 355 F. App'x 426, 429 (Fed. Cir. 2009); *Gebhart v. Peake*, 289 F. App'x 402, 403 (Fed. Cir. 2008).

Unlike in *Lamb*, there is no independent basis for the Court's jurisdiction. *Lamb*, 284 F.3d at 1381.  The Veterans Court did not interpret any regulation or statute, address their validity, or consider a constitutional challenge.  *See, e.g.*, *Williams v. McDonald*, 614 F. App'x 499, 503 (Fed. Cir. 2015) (refusing to address constitutional challenge to standard used by Veterans Court in denying writ when "[t]he court's denial of the petition was dependent in no small part on its factual findings that the VA had not unreasonably delayed processing Mr. Williams's claims" and "consideration of the constitutional issues raised by Mr. Williams would not have affected the court's decision").  This Court may not review the Veterans Court's determination "that [Mr. Monk] has not *demonstrated* that a class action or aggregate resolution is permitted *here*" pursuant to the All Writs Act, the court's equitable powers, or any other source, JA003 (emphases

28

added), because that conclusion inevitably involved the application of law to the

facts alleged in Mr. Monk's petition, *see* 38 U.S.C. § 7292(d)(2)(B).

Accordingly, Mr. Monk's appeal must be dismissed for lack of jurisdiction.

IV.   In The Alternative, This Court Should Affirm the Veterans Court's Decision
      That A Class Action Was Not Merited Under These Circumstances

This Court must affirm a Veterans Court decision unless it is "(A) arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law; (B)

contrary to constitutional right, power, privilege, or immunity; (C) in excess of

statutory jurisdiction, authority, or limitations, or in violation of a statutory right;

or (D) without observance of procedure required by law."  38 U.S.C. § 7292(d)(1).

Mr. Monk has not demonstrated that the Veterans Court's decision denying

his request for class treatment falls into any of the categories identified in

38 U.S.C. § 7292(d)(1).  Accordingly, this Court must affirm the Veterans Court's

decision.

Mr. Monk's petition for mandamus sought a sweeping result.  The petition

requested that the Veterans Court order the Secretary to "process [Mr. Monk's]

application," along with the applications of all veterans who have not received a

board decision[10] within one year of filing a timely NOD, "expeditiously"—that is,

within 30 days—through one of two remedies.  JA010–11.  First, Mr. Monk

requested the Veterans Court order the Secretary to certify the appeal to the board,

JA011, presumably regardless of whether statutory requirements antecedent to

board review such as a substantive appeal had been satisfied, *see* 38 U.S.C.

§ 7105(d)(3), or whether VA was still in the process of gathering evidence on the

veteran's behalf, *see* 38 U.S.C. § 5103A.  Alternatively, Mr. Monk requested the

Veterans Court order that the claimant receive a grant[11] of benefits, JA011,

irrespective of whether the statutory bases for an award have been established,

38 U.S.C. § 1110.  Mr. Monk requested the Veterans Court issue any order to the

Secretary "on pain of either contempt or summary grant of the benefits sought."

JA011.

   In evaluating this sweeping request, which would seem more appropriate for

Congress, not the judiciary, the Court should consider certain features of the VA

--------

[10] The petition does not specify whether a final board decision on the merits would be necessary or whether a board remand would satisfy the requirement that a "decision" be issued within one year.

[11] Similarly, the petition does not specify what level of benefits is necessary to constitute a "grant," or whether VA would be in violation of the requirement to grant benefits if the claimant did not agree with, *e.g.*, the effective date VA assigned.  *See* 38 U.S.C. § 5110.

system.  VA has a statutory duty to assist veterans in substantiating their claims for

benefits by gathering information and evidence necessary to support the claim,

which often includes providing a free forensic medical examination in addition to

gathering a variety of records on the veteran's behalf.  38 U.S.C. § 5103A.  In

other words, unlike most administrative agencies, VA does not just *decide*

veterans' claims, it *develops* them.

Consistent with this duty, the VA appellate system is administered on an

open-record basis, meaning the claimant is generally free to submit new evidence

directly to VA while the case is on appeal or to identify previously unidentified

evidence that VA must obtain pursuant to the duty to assist.  38 C.F.R. §§ 3.156(b),

19.37, 20.1304.  Accordingly, VA regulations explicitly contemplate that new

evidence may be received after the record is transferred to the board.  38 C.F.R.

§ 19.37(b).  The receipt of new evidence during the appellate process can have the

effect of *preventing* the board from deciding the case until it has been re-

adjudicated by the agency of original jurisdiction.  *See, e.g.*, JA081 ("Continuous

Open Record Triggers Additional Decision(s) by [the Veterans Benefits

Administration]"); JA084 ("New evidence generally requires a new decision every

time.").  This is because if the board were to consider the case with the new

evidence in the first instance, there would be no remaining appellate body within

VA available to provide the statutory requirement of "one review on appeal to the

31

Secretary." 38 U.S.C. § 7104(a); *see also Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1347 (Fed. Cir. 2003) (board violates § 7104(a) when it "considers additional evidence without having to remand the case to the [agency of original jurisdiction] for initial consideration and without having to obtain the appellant's waiver").[12]

Of course, there may be other causes for delay in the adjudication of any particular veteran's claim for benefits. In some instances, the veteran's simultaneous attempts to litigate related matters in multiple fora may inadvertently hinder VA's ability to adjudicate his own claims, as the Veterans Court determined occurred in Mr. Monk's individual case. JA141. Clearly, delay caused by the veteran or other parties not in the Secretary's control cannot establish a veteran's right to mandamus relief. For these reasons, the Veterans Court carefully considers the factual circumstances surrounding a petitioner's asserted right to obtain relief in each case before determining whether mandamus relief may be granted. *See, e.g.*, *Solze v. Shinseki*, 26 Vet. App. 118, 123–25 (2013) (denying petition based on ten-year delay caused by Secretary's failure to appoint fiduciary

---

[12] The applicability of this rule of law was subsequently reduced, but not eliminated. In 2012, Congress added a new subsection (e) to 38 U.S.C. § 7105, allowing the board to consider evidence in the first instance if the evidence is submitted after the substantive appeal and otherwise meets the requirements of that subsection. *See* Pub. L. 112-154 § 501, 126 Stat. 1165, at 1190 (Aug. 6, 2012).

for incompetent veteran because petitioner had alternative means to obtain relief

and distinguishing *Freeman v. Shinseki*, 24 Vet. App. 404 (2011) and *Ribaudo*, 20

Vet. App. 552).

In light of VA's statutory obligations and the various causes for delay within

the VA system, the Veterans Court could not aggregate Mr. Monk's claims with

absent members of a putative class without ignoring the particular circumstances

that could entitle any particular member of the alleged class to a writ.  Mr. Monk

has failed to demonstrate that the Veterans Court's denial to aggregate these claims

was "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law; (B) contrary to constitutional right, power, privilege, or

immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in

violation of a statutory right; or (D) without observance of procedure required by

law," 38 U.S.C. § 7292(d)(1), so the decision must be affirmed.

A.    The Veterans Court Correctly Determined Mr. Monk Failed To
      Demonstrate Aggregate Resolution Of His Petition Is Appropriate

Recognizing that wholesale aggregation of claims for summary resolution on

no basis other than that they have taken a certain period of time to resolve is flatly

incompatible with the VA system, the Veterans Court correctly refused to apply

the resolution contained in Mr. Monk's individual petition to the proposed

aggregate group because it "determin[ed] that he has not demonstrated that a class

33

action or aggregate resolution is permitted *here*." JA003 (emphasis added).  The

Veterans Court noted Mr. Monk's own acknowledgment that the court had

previously declined to permit class actions when doing so would be

"unmanageable and unnecessary."  JA003; *see also Harrison*, 1 Vet. App. at 438

(concluding that "(1) [the Veterans Court] lacks the power to adopt a rule *of the*

*kind proposed* for class actions, and . . .  (2) such a procedure in this appellate court

would be highly unmanageable, and that (3) such a procedure is unnecessary in

light of the binding effect of this Court's published opinions") (emphasis added)

(internal citations omitted); *Lefkowitz*, 1 Vet. App. at 440 (same).

Although not explicitly stated, the Veterans Court implicitly concluded that

Mr. Monk's request that the Veterans "Court require Respondent to grant benefits

to those similarly situated veterans or certify their appeals to the BVA within 30

days," JA011, was impermissible because, like the procedures proposed in

*Harrison* and *Lefkowitz*, Mr. Monk's proposal would be unmanageable and

unnecessary.  JA003–04; *see also Henderson v. Brown*, 10 Vet. App. 272, 278

(1997) (commenting that a class action procedure at the Veterans Court "would be

both unwise and unnecessary").

Even accepting Mr. Monk's interpretation that the Veterans Court held that

"it lacked authority *ever* to aggregate claims, regardless of the facts or

circumstances," Op. Br. at 6, the Veterans Court's arguably overly broad and

inarticulate statement, JA004, is no reason for reversal. "An appellate court can affirm a decision of the [lower] court upon any ground supported by the record." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1350 (Fed. Cir. 2013); *see also Helvering v. Gowran*, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.").

The Veterans Court correctly concluded Mr. Monk could not demonstrate that aggregated mandamus relief was appropriate under the circumstances presented in his petition. JA003. "A request for relief by way of mandamus is a claim of legal entitlement to a particular remedy. To obtain that remedy, the petitioner must show (1) that he has a clear legal right to relief; (2) that there are no adequate alternative legal channels through which the petitioner may obtain that relief, and (3) that the grant of mandamus relief is appropriate under the circumstances." *Beasley*, 709 F.3d at 1157. In the context of delay, the Veterans Court has determined that a petitioner demonstrates a clear and indisputable right to a writ only when the delay "is so extraordinary, given the demands and resources of the Secretary, that the delay amounts to an arbitrary refusal to act, and not the product of a burdened system." *Costanza v. West*, 12 Vet. App. 133, 134 (1999) (per curiam); *see also Beasley*, 709 F.3d at 1159 (affirming denial of

35

mandamus relief because mandamus cannot be used as a substitute for the appeals process).

The Veterans Court had no way of determining whether those unidentified "veterans in medical or financial need who have not received a decision within twelve months of timely submitting an NOD," JA011, have a "clear legal right" to receive benefits or have their appeals certified and whether the grant of mandamus would be "appropriate under the circumstances" without undertaking a factual inquiry into the circumstances of each individual claim. Clearly, a factual inquiry into the claims of tens of thousands of veterans, if not more, *see* Op. Br. at 5 (similarly situated veterans are "potentially in excess of 100,000"), undertaken in the first instance in the Veterans Court is unmanageable and unnecessary as a matter of law, as contemplated by the Veterans Court in *Harrison* and *Lefkowitz*.

Apparently failing to appreciate the limitations placed on the extraordinary relief sought in the Veterans Court, Mr. Monk's petition is silent with regard to any of the factual circumstances causing the delay in the adjudication of benefits claims. Mr. Monk's petition focuses on the *effects* of delay on the members of the putative class, not the *causes* that could arguably constitute an arbitrary refusal to act justifying the issuance of a writ. *See, e.g.*, JA017 ("Delay in adjudicating disability benefits applications is especially detrimental to those who suffer the 'invisible wound' of PTSD."); *id.* ("The extensive delays experienced by a veteran

36

at each stage of the appeals process after submitting an NOD severely prejudice veterans who are elderly, indigent, and suffer serious medical conditions.").

Although the struggles faced by veterans waiting years to obtain medical and financial benefits, as alleged by Mr. Monk,[13] are deserving of sympathy, these struggles cannot be the basis for extraordinary mandamus relief absent *any* consideration of the underlying cause of those allegedly devastating delays.    Only after establishing that the delay was caused by the Secretary's actual or effective arbitrary refusal to act can a petitioner potentially establish an entitlement to a writ of mandamus.  *Costanza*, 12 Vet. App. at 134.

At best, Mr. Monk argues class treatment is appropriate and class-wide relief should be granted based on the exact factual circumstance—an overburdened system—the Veterans Court and this Court have rejected as a basis for issuance of a writ.  *Compare* Op. Br. at 6 ("Extraordinary Delays Pervade the VA Appeals System."); JA010 ("Delays are pervasive throughout the VA system."); JA019 ("[A]n aggregate resolution procedure in this case would be a less burdensome way to address the systemic and recurring problem of post-NOD delays.") *with*

---

[13] Mr. Monk appears to suggest that veterans awaiting final board decisions necessarily face significant hardship until receiving a final board decision.  Op. Br. at 35–36.  However, we note that evidence provided by Mr. Monk in support of his petition demonstrates that, as of 2014, the vast majority (72%) of veterans then in the appeal process actually were in contemporaneous receipt of some form of VA compensation benefits.  JA077.

*Costanza*, 12 Vet. App. at 134 (a petitioner is not entitled for a writ of mandamus to remedy delay that is "the product of a burdened system"); *Beasley*, 709 F.3d at 1159 (rejecting appellant's argument because it "could lead to the widespread use of the writ of mandamus as a substitute for the ordinary appeals process," which "is not a result that is beneficial to the system as a whole, and it is certainly not one contemplated by Congress").

The Veterans Court's decision in *Ribaudo*—where the Veterans Court actually provided collective relief—underscores the problems inherent in Mr. Monk's request.  Mr. Ribaudo's petition, unlike Mr. Monk's, focused on the *cause* of the delay in adjudicating his claim, which was directly traceable to the Secretary.  *Ribaudo*, 20 Vet. App. at 555 ("Here, the action that the petitioner seeks to abrogate was instituted by the Secretary and Board Chairman themselves."); *id.* at 559 ("The delay in this case is not the product of a burdened system; rather, it is based on a choice by the Secretary to delay the adjudication of the petitioner's claim.").  The Secretary's action delaying the adjudication of Mr. Ribaudo's claim—that is, the issuance of the memorandum and subsequent stay—equally affected all other claimants with "*Hass*-like" claims.  Accordingly, the Veterans Court held that the Secretary's action in issuing the memorandum constituted an arbitrary refusal to act and that Mr. Ribaudo had demonstrated a clear and indisputable right to the writ on behalf of himself and all other veterans affected by

38

the memorandum. *Id.* Mr. Monk, in contrast, failed to allege any common cause

entitling the putative class members to relief, so the Veterans Court inevitably

would have been required to address individually the source of the delay for each

member and ensure that each petitioner did not have adequate means of relief

through the appeals process, an unduly burdensome and unmanageable task.

This Court should affirm the decision of the Veterans Court that aggregated

treatment was inappropriate because individually analyzing the delays of thousands

of purported class members is unmanageable and unnecessary and the only

asserted cause for the challenged delays is an overburdened system, which cannot

be the basis for a writ as a matter of established veterans' law. *See* 38 U.S.C.

§ 7292(d)(1); *see also Adeyi v. McDonald*, 606 F. App'x 1002, 1004 (Fed. Cir.

2015) (affirming Veterans Court's decision it lacked jurisdiction to entertain

claims brought by a single petitioner on behalf of a group of veterans because it

"reflect[ed] longstanding Veterans Court precedent" and thus was, "at a minimum,

not clearly incorrect").

> B.    The Veterans Court Properly Considered And Rejected
>        Mr. Monk's Attempt To Use The All Writs Act To Expand Its
>        Jurisdiction Impermissibly

Contrary to Mr. Monk's insistence that the Veterans Court "fail[ed] even to

consider its authority to aggregate claims under the [All Writs Act] or its equitable

powers," Op. Br. at 22, the Veterans Court noted Mr. Monk's arguments regarding

its discretion and properly rejected them for the same policy considerations

articulated in *Lefkowitz* and *Harrison*. JA003. The Veterans Court is not required

to provide "a full written opinion on every issue raised." *Bernklau v. Principi*, 291

F.3d 795, 801 (Fed. Cir. 2002); *see also Hartman v. Nicholson*, 483 F.3d 1311,

1315 (Fed. Cir. 2007) (Veterans Court's statement that appellant "has not

demonstrated that the [b]oard committed prejudicial error . . . that would warrant

reversal or remand" was sufficient to infer the court considered appellant's

argument). The Veterans Court "may have merely concluded, for various reasons,

that discussion of" its general authority to aggregate claims pursuant to the All

Writs Act or its purported equitable powers "was neither necessary nor

appropriate." *Hartman*, 483 F.3d at 1315. Any purported failure to consider Mr.

Monk's arguments regarding the Veterans Court's general authority to aggregate

claims is unfounded and cannot serve as the basis for reversal.

Although using the All Writs Act for the purpose Mr. Monk proposes might

seem tempting and even logical, Mr. Monk's position goes too far. The All Writs

Act provides the Veterans Court with authority to issue extraordinary writs in aid

of its prospective jurisdiction. *E.g.*, *Am. Legion*, 21 Vet. App. at 7. But this

principle cannot operate to *expand* the jurisdiction conferred by Congress. *Id.*

("Thus, the [Veterans] Court has jurisdiction to issue a writ of mandamus only if

40

granting the petition could lead to a final [b]oard decision for the petitioner over which the Court would have jurisdiction."); *see also Cox*, 149 F.3d at 1363.

The All Writs Act does not—and cannot—create jurisdiction Congress has otherwise failed to confer or effect change to the statutory and regulatory Congressionally established framework for claim development, *id.*, and Mr. Monk does not meaningfully argue otherwise. Rather, he points to cases in which courts have used writs issued in aid of jurisdiction to protect their jurisdiction against unauthorized or allegedly improper conduct by an inferior entity that would operate as an artificial barrier to their jurisdiction. Op. Br. at 26 (citing *McClellan v. Carland*, 217 U.S. 268, 280 (1910) and *In re Paralyzed Veterans of America*, 392 F. App'x 858, 859-60 (Fed. Cir. 2010)). These cases are inapposite and have no bearing on the issues on appeal.

Pursuant to Veterans Court precedent, a mandamus petition will not be granted unless the challenged delay is functionally equivalent to an arbitrary refusal to act on the part of the Secretary.[14]  *See Costanza*, 12 Vet. App. at 134; *see also* JA026 (alleging that VA RO's failure to render a decision regarding Mr. Monk's claims for nearly two years following the submission of his NOD

---

[14] Unless this standard is met, there is no clear and indisputable right to the writ under Veterans Court precedent. *See, e.g.*, *Cheney v. U.S. Dist. Ct. D.C.*, 542 U.S. 367, 380-81 (2004).

41

constitutes "an arbitrary refusal to act").  Accordingly, every member in the putative class would need to satisfy this high standard.

Mr. Monk offers no means for conducting this fact-specific inquiry for the many thousands of veterans he asserts comprise the class.  Determining that the Secretary has arbitrarily refused to act on every appeal pending for more than twelve months, as Mr. Monk urges, JA011, regardless of the reason for the delay, goes well beyond protecting the Veterans Court's potential appellate jurisdiction over a final board decision.  This use of the writ would be an extremely aggressive use of a "drastic and extraordinary remedy that must be reserved for really extraordinary causes" due to its status as "one of the most potent weapons in the judicial arsenal."  *Cheney*, 542 U.S. at 380 (internal quotation marks and citations omitted).  The Veterans Court properly refused to expand its jurisdiction beyond that conferred by Congress by utilizing the All Writs Act in the manner proposed by Mr. Monk.

C.     Mr. Monk Has Failed To Show How His Rights Or Those Of The Purported Class Have Been Harmed By The Veterans Court's Decision

Even were this Court to conclude that the Veterans Court was required to address explicitly its authority to aggregate claims pursuant to the All Writs Act or its equitable powers, neither Mr. Monk nor the purported class suffered any harm in the Veterans Court's failure to do so.

42

Absent prejudice to a party's substantial rights, the Court should not reverse a lower court's decision.  28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment . . . without regard to errors or defects which do not affect the substantial rights of the parties. "); *Szemraj v. Principi*, 357 F.3d 1370, 1374 (Fed. Cir. 2004) (pursuant to the common law of harmless error, this Court disregards errors "not affect[ing] the substantial rights of the parties"); *see also Certain Former CSA Employees v. Dep't of Health & Human Servs.*, 762 F.2d 978, 986 (Fed. Cir. 1985).

For example, in *Certain Former CSA Employees*, a group of individuals formerly employed with the Community Services Administration (CSA) appealed the Department of Health and Human Services decision not to hire them for positions with the newly-formed Office of Community Services to the Merits Systems Protection Board (MSPB) following the discontinuation of funding for CSA.  *Id.* at 981.  The former employees alleged that the procedures leading to a reduction-in-force of CSA employees did not comply with the relevant statute and implementing regulation, so all CSA employees should have been hired by the Office of Community Services when CSA was abolished.  *Id.*  Some employees moved for the MSPB to adjudicate the matter as a class action pursuant to 5 C.F.R. § 1201.27 (1982).  *Id.*  The MSPB decided it would not invalidate the entire reduction-in-force, but ordered the case be remanded to the agency to determine

43

whether individual employees not hired by the Office of Community Services were denied retention because positions they could have filled were occupied by less qualified individuals. *Id.* at 984.

On appeal to this Court, the former employees argued that the MSPB should not have adopted this remedy because the reduction-in-force should have been invalidated in its entirety. *Id.* at 985. This Court held that the MSPB's remedy "constituted a reasonable method of dealing with perhaps a unique and certainly most unusual situation." *Id.* The Court then affirmed the MSPB's denial of class certification pursuant to 5 C.F.R. § 1201.27(a) because the former employees "had not given any convincing reason why" the denial of class action was in error and "in view of [the Court's] decision on the merits of the case, it is difficult to see how the petitioners have been prejudiced by the Board's failure to convert their individual appeals into a class action." *Id.* at 986.[15]

Like the absent petitioners in *Certain Former CSA Employees*, the purported class here will receive no benefit from a reversal of the Veterans Court's decision because even if Mr. Monk succeeds in representing the class he seeks to form, the putative class will be unable to obtain its desired relief—an order directing the

---

[15] Although the MSPB refused to allow the appeal to move forward in class action status, it did allow limited consolidation for those common questions that were "national in scope." *Id.* at 981.

44

Secretary to grant their benefits or certify their appeals to the board within 30 days,

JA011—because Mr. Monk is precluded from pursuing such a claim.

"[A] second suit will be barred by claim preclusion if: (1) there is identity of

parties (or their privies); (2) there has been an earlier final judgment on the merits

of a claim; and (3) the second claim is based on the same set of transactional facts

as the first." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed.

Cir. 2000). The Veterans Court denied Mr. Monk's individual petition for a writ of

mandamus because it determined that Mr. Monk's use of the writ procedure would

"bypass the usual appellate procedures" and "Mr. Monk ha[d] not demonstrated an

indisputable right to a writ under these circumstances." JA141. As Mr. Monk

concedes, Op. Br. at 2 n.1, his claim for individual mandamus relief is moot

because he was found eligible for service-connected disability benefits while his

appeal of the Veterans Court's decision on his individual petition was pending. All

of the elements for claim preclusion are present. *Jet*, 223 F.3d at 1362. Mr. Monk

is thus precluded from arguing that, notwithstanding the Veterans Court's

conclusion regarding his individual petition, the Secretary has arbitrarily refused to

act on the claims of the proposed aggregate group, entitling them to relief. And

any class represented by Mr. Monk would be bound by the adverse decision on his

individual petition for writ. *See, e.g.*, *Cooper v. Fed. Reserve Bank of Richmond*,

467 U.S. 867, 880 (1984) ("[T]he Baxter petitioners, as members of the class

45

represented by the intervening plaintiffs in the Cooper litigation, are bound by the adverse judgment in that case.").

There is no harm affecting the substantial rights of the absent members of the purported class that can be remedied through remand. These individuals are currently free to file their own petitions arguing why their particular individual circumstances warrant a writ of mandamus and the Veterans Court is free to consider their individual arguments. Indeed, these absent members of the purported class may even articulate particular groups for which they contend aggregated relief would be appropriate and present those arguments to the Veterans Court. The Veterans Court, when considering the merits of those individuals' arguments, will not be bound by the contrary single-judge decision in Mr. Monk's case. *Bethea*, 2 Vet. App. at 254. Conversely, remanding the issue to the Veterans Court for it to reconsider its authority to aggregate claims when Mr. Monk is precluded from obtaining any relief on the merits on behalf of the purported class would be a waste of judicial resources.

V.    This Court May Not Issue Advisory Opinions

Finally, it is well-established that the Court may not give advisory opinions. *Local No. 8-6, Oil Chemical & Atomic Workers Int'l Union, AFL-CIO v. Missouri*, 361 U.S. 363, 394 (1960) ("[T]he duty of this Court is to decide actual controversies by a judgment which can be carried into effect, and not to give

opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.") (quotation marks omitted); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718 (Fed. Cir. 2014) ("Indeed, if claimed subject matter does not fall within the ambit of section 101, any determination on validity or infringement constitutes an impermissible advisory opinion."); *Teva Pharma. USA, Inc. v. Novartis Pharma. Corp.*, 482 F.3d 1330, 1337–38 (Fed. Cir. 2007) ("Similar to the ripeness doctrine and based on the same constitutional 'controversy' requirement is the Court's prohibition against advisory opinions.") (internal citations omitted).

Any conclusion by this Court that the Veterans Court may—pursuant to the All Writs Act, its equitable powers, or any other authority—entertain class actions in theoretical circumstances not presented by *this* appeal would constitute an impermissible advisory opinion.  In any event, as discussed above, an opinion from this Court advising the Veterans Court it possesses an abstract authority to aggregate claims is unnecessary in light of the rules governing the Veterans Court and its established precedent.

As the *Ribaudo* decision and the Veterans Court's rules reveal, the lack of a formal mechanism for certifying a class action has not prevented the Veterans Court from granting collective relief in appropriate circumstances.  To the extent that Mr. Monk and *amici curiae* seek an opinion from this Court stating that the

47

Veterans Court has the authority to aggregate claims, such a statement would be both impermissible and unnecessary.

Mr. Monk's remaining arguments, as well as those presented by *amici curiae*, cannot rescue his appeal.

First, the Secretary does not dispute Mr. Monk's contention, Op. Br. at 24, 36, that the Veterans Court, pursuant to the All Writs Act, "may issue all writs necessary or appropriate in aid of [its] respective jurisdiction and agreeable to the usages and principles of law," 28 U.S.C. § 1651; *see also Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005) (quoting *Cox*, 149 F.3d at 1362).

However, Mr. Monk has failed to explain how *aggregate treatment*—as opposed to relief on the merits of his petition—would be in aid of the Veterans Court's jurisdiction. *See, e.g.*, *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) ("The exercise of this power 'is in the nature of appellate jurisdiction' where directed to an inferior court and extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected.") (internal citation omitted).  Although an order instructing the Secretary to certify aggregated appeals to the board could arguably aid the Veterans Court's jurisdiction, Mr. Monk did not seek aggregate treatment by the board, so there was no "potential jurisdiction" that could "be later perfected" by a decision to *aggregate* Mr. Monk's petition at the Veterans Court.

48

Second, Mr. Monk's reliance on the aggregated treatment of *habeas corpus* proceedings outside of Rule 23, *e.g.*, Op. Br. at 27–30, is misplaced. In *United States ex. rel. Sero v. Preiser*, the United States Court of Appeals for the Second Circuit affirmed the lower court's decision that a constitutional challenge to New York state's rules regarding criminal offenders between the ages of 16 and 21 be allowed to proceed as a class. 506 F.2d 1115, 1225–26 (2d Cir. 1974). At the time the court of appeals reviewed the case, Rule 23 of the Federal Rules of Civil Procedure did not apply directly to *habeas corpus* actions. *Id.* at 1125. Nonetheless, after reviewing the merits of the named plaintiffs' claims, the appeals court concluded that class treatment akin to the mechanism provided by Rule 23 was appropriate under the "unusual circumstances of [the] case." *Id.* at 1125–26. In particular, the court of appeals determined class treatment was appropriate because "the charge that the four-year reformatory sentences violates equal protection is applicable on behalf of the entire class, uncluttered by subsidiary issues." *Id.* at 1125–26.

None of these "unusual circumstances" is present here. As discussed above, there are numerous individual questions and "subsidiary issues" the Veterans Court would need to consider before determining that class-wide extraordinary relief in the form of a writ of mandamus is appropriate. Mr. Monk's reliance on the allegation that delays adversely affect large numbers of veterans seeking benefits

49

cannot overcome his failure to identify any common cause for the alleged delays.

Even if Mr. Monk could identify common questions, his ability to adequately

represent the class is, at best, questionable considering the Veterans Court's

determination his own actions had significantly contributed to any delay he

experienced.

Third, an opt-out system, as suggested by the Veterans Organization,

Veterans Orgs. Br. at 13–18, is unnecessary.  In their *amicus curiae* brief, Veterans

Orgs. Br. at 13, the Veterans Organizations argue that many similarly situated

veterans do not benefit from the binding precedent rule articulated in *Tobler v.*

*Derwinski*, 2 Vet. App. 8, 14 (1991) ("We hold that a decision of this Court, unless

or until overturned by this Court *en banc*, the United States Court of Appeals for

the Federal Circuit, or the Supreme Court, is a decision of the Court on the date it

is issued.").  The Veterans Organizations argue that a veteran who fails to perfect

an appeal of a denial of benefits decision relying on a rule of law later invalidated

in a precedential decision is unjustly precluded from retroactively benefiting from

the precedential decision unless he files a new claim.  *Id.* at 13–15.  First, a

requirement that courts must reopen final unappealed agency decisions when a new

rule of law is announced would be contrary to the rules governing finality.  *James*

*B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544 (1991) ("[W]hen the Court

has applied a rule of law to the litigants in one case it must do so with respect to all

others not barred by procedural requirements or res judicata.").  Second, as this Court held in *Cook v. Principi*, Congress created two exceptions to finality upon which a veteran could rely, one of which—the new and material evidence provision—would seem to address the hypothetical situation proposed by the Veterans Organizations.  *See* 318 F.3d 1334, 1337 (Fed. Cir. 2002) (explaining the "new and material evidence" exception articulated in 38 U.S.C. § 5108).

Moreover, even in the absence of a formal class action mechanism, the Veterans Court has previously considered the claims of absent veterans when it believes a large number may be affected by a pending decision and fashioned mechanisms for protecting their rights.  For example, in *Bove*, the Veterans Court considered whether the statutory time limit to file a notice of appeal to the Veterans Court was subject to equitable tolling following the Supreme Court's determination in *Henderson v. Shinseki*, 562 U.S. 428 (2011).  25 Vet. App. at 137.  The *Henderson* Court held that the statutory time limit was procedural and not jurisdictional, overruling previous Veterans Court precedent, and the Supreme Court remanded the case for further consideration.  *Id.*  On June 24, 2011, following remand in *Henderson*, the Veterans Court issued a miscellaneous order staying all cases affected by the *Henderson* decision until the Veterans Court issued an order regarding the applicability of equitable tolling, Misc. Order No.  10-11, *In re: Timeliness of Appeals*, 25 Vet. App. 109 (June 24, 2011),

51

eventually decided in *Bove*. Contemporaneously with its decision in *Bove*, the

Veterans Court issued another miscellaneous order lifting the stays it initiated in its

June 24, 2011 order and sending notice through the Veterans Court's electronic

filing system. *See* Misc. Order No. 21-11, *In re Timeliness of Appeals* (Vet. App.

Dec. 20, 2011); *Stoffel v. Shinseki*, 527 F. App'x 940, 942 n.1 (Fed. Cir. 2013).

The Veterans Court thus protected the rights of those claimants whose appeals

could have been affected by a change in law without the need to adopt a formal

class action mechanism.

Likewise, in *Lane v. West*, a veteran filed a petition for a writ of mandamus

requesting that the Veterans Court order the board to issue a decision regarding a

claim asserting that a previous decision was incorrect pursuant to a recently

amended statute, 38 U.S.C. § 7111. 11 Vet. App. 506, 507 (1998). The Secretary

argued that the board was deferring adjudication of Mr. Lane's claim pending the

issuance of final rules and regulations consistent with the newly amended statute to

avoid "disparate treatment . . . vis-à-vis similarly-situated claimants." *Id.* at 508.

Recognizing that other veterans may be impacted by the delay in promulgating

rules, the Veterans Court ordered the Secretary supplement his response with,

among other things, the number of claims filed under the recent act, the status of

the rulemaking process, and the steps the Secretary had taken to expedite that

process. *Id.* at 509. The Veterans Court indicated that "a lack of urgency" by the

Secretary could constitute an "inexcusable delay" affecting a large number of claimants, in which case "a writ of mandamus will have to issue." *Id.*[16]

Through its decisions in cases like *Bove*, *Lane*, and *Ribaudo*, the Veterans Court has established its willingness to consider the claims of absent, similarly-situated veterans and create mechanisms to protect them. These examples bolster the Veterans Court's long-standing position that, to protect the interests of veterans and efficiently review claims, it does not need to create a complicated and unmanageable procedure, such as under Rule 23 of the Federal Rules of Civil Procedure.

Finally, there is nothing to substantiate the allegations by the Veterans Organizations, Veterans Orgs. Br. at 18–25, that offers of settlement from the Secretary constitute "gaming" of the VA system and there is no evidence on the record to indicate that any such "gaming" occurred in this case. The Secretary made no settlement offer to Mr. Monk and there is no indication that he otherwise acted in bad faith. Even had a settlement offer been extended, opposing parties routinely make attractive offers of settlement when there is significant litigation

---

[16] In a subsequent decision, the Veterans Court denied Mr. Lane's petition because "he ha[d] neither shown a clear an indisputable right to the writ, nor that administrative remedies have been exhausted." *Lane v. West*, 12 Vet. App. 220, 222 (1999).

risk.  Moreover, contrary to the suggestion by the Veterans Organizations, *id.* at 25 n.5, aggregated resolution would not necessarily prevent an opportunistic defendant from making a full-value settlement offer to the named plaintiff and thus avoid an unwelcome holding in favor of the class, *see, e.g.*, *Genesis Healthcare*, 133 S. Ct. at 1529–30 (holding that "the mere presence of collective-action allegations in the complaint cannot save a suit from mootness once the individual claim is satisfied").

Mr. Monk and *amici curiae* ultimately seek a judicial solution to an essentially legislative policy concern—the proliferation of delays of resolving veterans benefits claims at all levels.  The protestations that the Veterans Court should have more carefully considered the circumstances under which it *might* possess the authority to fashion a formal procedural tool for aggregating claims do not undermine the basic reality that aggregation was not appropriate under the circumstances presented in Mr. Monk's petition.  Even if it were, this Court does not possess jurisdiction to consider the merits of the Veterans Court decision because Mr. Monk's individual claim is moot, so he lacks standing to pursue the claims of the uncertified putative class, and his appeal does not present any issues subject to review by this Court pursuant to 38 U.S.C. § 7292.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court dismiss the appeal for lack of jurisdiction or, in the alternative, affirm the decision of the United States Court Appeals for Veterans Claims.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

Of Counsel:

/s/Martin F. Hockey

BRIAN D. GRIFFIN                MARTIN F. HOCKEY
Deputy Chief Counsel            Assistant Director

/s/Agatha Koprowski

AMANDA BLACKMON                 AGATHA KOPROWSKI
Attorney                        Trial Attorney
Office of General Counsel       Commercial Litigation Branch
Department of Veterans Affairs  Civil Division, Department of Justice
810 Vermont Avenue, NW          P.O. Box 480
Washington, DC 20420            Ben Franklin Station
                                Washington, D.C. 20044
                                Telephone: (202) 616-0467
                                Facsimile: (202) 514-8624
                                E-mail: agatha.m.koprowski@usdoj.gov

January 14, 2016                Attorneys for Respondent-Appellee

## CERTIFICATE OF COMPLIANCE

I, Agatha Koprowski, in reliance upon the word count of the word processing system used to prepare the brief, certify that the "Brief For Respondent-Appellee" excluding the table of contents, table of authorities, certificate of service, and any certificates of counsel, contains approximately 13,055 words. This brief was prepared using Microsoft Word 2010.

/s/Agatha Koprowski
Dated:  January 14, 2016    AGATHA KOPROWSKI

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 14th day of January, 2016, a copy of the foregoing "Brief for Respondent-Appellee" was filed electronically.

   X    This filing was served electronically to all parties by operation of the Court's electronic filing system.


    /s/Agatha Koprowski    


_____ I caused a copy of this filing to be served via

    _____ hand delivery

    _____ first class mail

    _____ third-party commercial carrier for delivery within 3 days

    _____ electronic means, with the written consent of the party being served to the following address:


    _____